## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02172-RMR-NYW

LINDSAY MINTER,
THOMAS MAYES,
KRISTIN MALLORY,
TYLER SPRAGUE,
ALISSIA ACKER,
IRMA JOLENE FISHER,
TOBIAS HOPP, on behalf of themselves, and others similarly situated,

      Plaintiffs,

v.

CITY OF AURORA, COLORADO, et al.

      Defendants.

---

## ORDER

---

Magistrate Judge Nina Y. Wang

This matter comes before the court on:

(1)      Defendants Stephen Redfearn, Delbert Tisdale, Michael McClelland, Terry Brown, Reginald DePass, Nathaniel Moss, Stephen T. Garber, Darren Chamberland, Matthew Brukbacher, William Hummel, Daniel Smick, Jason Bubna, Austin Runyon, Sammie Wicks, Joshua Winters, Kevin Deichsel, Ryan Sweeney, Jordan O'Neal, Caleb Joseph Parrella, Edward Vance, Nicholas Wilson, Michael Bender, Kathrine Lewis, Dejon Marsh, Robert Rosen, Ronald Jauregui-Gutierrez, Haden Jonsgaard, Matthew Green, Ethan Snow, Brian McClure, Scott Osgood, Ryan Stoller, Juan Gonzalez, Jennifer McCormack, Nicholas Brungardt, Joshua Bebee, Steven Brenneman, Nicholas Lesansky, Matthew Campbell, Cory Mankin, and Greta Salazar (individual officers from the Aurora Police Department); Jeanette Rodriguez, Robert Weatherspoon, Tyler Teigen, Sean Conley, Christopher (Shane) Purcell, Lewis Litwiler, Greg

Bryant, Ben Bullard, Ryan McConnell, and Brandon Holder (individual officers from the Arapahoe County Sheriff's Office); and Anthony Rosales and Carly Simmons's (individual officers from the Jefferson County Sheriff's Office) (collectively, "Individual Law Enforcement Defendants") Joint Motion to Compel (or "Motion to Compel") [Doc. 109, filed June 7, 2021]; and

(2)    The Parties' Stipulated Motion to Stay Proceedings Pending Ruling on Defendants' Joint Motion to Compel [Doc. 136, filed September 15, 2021].

The presiding judge[1] referred the instant Motion to the undersigned pursuant to 28 U.S.C. § 636(b), the Order Referring Case filed July 24, 2020 [Doc. 5], and Memoranda dated June 7, 2021 and September 17, 2021, respectively.  [Doc. 110; Doc. 137].  Having reviewed the Motion to Compel and associated briefing [Doc. 109; Doc. 116; Doc. 122], the applicable case law, and being otherwise advised in its premise, this court respectfully **GRANTS IN PART and DENIES IN PART** the Motion to Compel and **DENIES** the Motion to Stay as **MOOT**.

## BACKGROUND

Plaintiffs Lindsay Minter ("Plaintiff Minter" or "Ms. Minter"), Pastor Thomas Mayes ("Plaintiff Mayes" or "Pastor Mayes"), Kristin Mallory ("Plaintiff Mallory" or "Ms. Mallory"), Tyler Sprague ("Plaintiff Sprague" or "Mr. Sprague"), Alissia Acker ("Plaintiff Acker" or "Ms. Acker"), Irma Jolene Fisher ("Plaintiff Fisher" or "Ms. Fisher"), and Tobias Hopp ("Plaintiff Hopp" or "Mr. Hopp") (collectively, "Plaintiffs") bring this putative class action against Defendants for their alleged violations of Plaintiffs' state and federal constitutional rights during a violin vigil Plaintiffs organized and/or attended in Elijah McClain's memory on June 27, 2020

---

[1] This action was originally assigned to the Honorable Raymond P. Moore but then was reassigned to the Honorable Regina M. Rodriguez upon her appointment to the United States District Court. [Doc. 131].

in Aurora, Colorado.  *See generally* [Doc. 20].  Specifically, Plaintiffs allege that their rights—and the rights of others similarly situated—were violated as the result of municipal policies or practices adopted by the City of Aurora and/or the actions taken by law enforcement personnel on June 27, 2020, after the violin vigil was declared an unlawful assembly and Defendant Vanessa Wilson ("Defendant Wilson" or "Chief Wilson"), the Interim Police Chief of Aurora, ordered law enforcement personnel to disperse the crowd that had gathered.  [*Id.*].  With little warning to vigil attendees, law enforcement personnel proceeded to undertake crowd dispersal efforts.  [*Id.* ¶¶ 38– 40].  In so doing, law enforcement personnel deployed chemical agents, used non-lethal projectiles, and—in some instances—used batons to "jab" or "prod" vigil attendees.  [*Id.* ¶ 41].

Believing Defendants violated their constitutional and statutory rights, Plaintiffs initiated this action by filing a Complaint on July 23, 2020.  *See generally* [Doc. 1].  This action was assigned to Judge Moore and drawn to the undersigned. [Doc. 3, filed July 23, 2020].  Judge Moore subsequently referred this case to the undersigned pursuant to 28 U.S.C. § 636(b).  [Doc. 5].  On October 12, 2020, Plaintiffs filed an Amended Complaint as a matter of right, which remains the operative pleading in this case.  [Doc. 20].  Therein, Plaintiffs assert ten claims for relief on behalf of themselves and all others similarly situated, including five § 1983 claims for violations of their federal constitutional rights and five Colorado state law claims.

First, all Plaintiffs assert a claim pursuant to 42 U.S.C. § 1983 for violation of their First Amendment rights to freedom of speech and assembly ("Claim One") against all Defendants. [Doc. 20 ¶¶ 229–50].  Second, all Plaintiffs assert a retaliation claim pursuant to § 1983 for violation of their First Amendment rights ("Claim Two") against all Defendants for allegedly using unlawful force against Plaintiffs in retaliation for Plaintiffs' exercise of their First Amendment rights.  [*Id.* ¶¶ 251–72].  Third, Plaintiffs Minter, Mallory, Sprague, Acker, Fisher, and Hopp assert

a Fourth Amendment excessive force claim under § 1983 ("Claim Three") against all Defendants except Defendant Michael Coffman ("Defendant Coffman") for their excessive use of physical force, including the use of chemical agents, and failures to intervene.  [*Id.* ¶¶ 273–94].  Similarly, Plaintiffs Minter, Mallory, Sprague, Acker, Fisher, and Hopp assert a Fourteenth Amendment substantive due process claim under § 1983 ("Claim Four") against all Defendants except Defendant Coffman for their disproportionately excessive use of force.  [*Id.* ¶¶ 295–310].  All Plaintiffs assert a fifth claim for relief, for alleged violations of their Fourteenth Amendment Due Process Clause rights, brought pursuant to § 1983 ("Claim Five") against all Defendants except Defendant Coffman and premised on their alleged lack of legal authority to order the dispersal of Plaintiffs at the violin vigil.  [*Id.* ¶¶ 311–24].

Plaintiffs also assert five state law claims against the Individual Law Enforcement Defendants and Defendant Wilson: Claim Six is a freedom of speech claim brought by all Plaintiffs pursuant to Colo. Rev. Stat. § 13-21-131 and the Free Speech Clause of the Colorado Constitution, Art. II, § 10, [Doc. 20 ¶¶ 325–43];   Claim Seven is brought by all Plaintiffs pursuant to Colo. Rev. Stat. § 13-21-131 and the Assembly and Petition Clause of the Colorado Constitution, Art. II, § 24, [*id.* ¶¶ 344–62]; Claims Eight and Nine are excessive force claims brought by Plaintiffs Minter, Mallory, Sprague, Acker, Fisher, and Hopp pursuant to Colo. Rev. Stat. § 13-21-131 and Article II, Sections 7 and 25 of the Colorado Constitution, respectively [*id.* ¶¶ 363–92]; and Claim Ten is a due process claim brought by all Plaintiffs pursuant to Colo. Rev. Stat. § 13-21-131 and the Colorado Constitution, Art. II, § 25 [*id.* ¶¶ 364–404].

On January 15, 2021, Defendant Coffman, the Arapahoe and Jefferson County Defendants ("County Defendants"), and the Aurora Officer Defendants filed Motions to Dismiss.  *See* [Doc. 61 (the "Coffman Motion to Dismiss"); Doc. 62 (the "County Defendants' Motion to Dismiss");

Doc. 66 (the "Aurora Officers' Motion to Dismiss")].  That same day, Defendants Wilson and Rodriguez also filed Partial Motions to Dismiss, respectively.  *See* [Doc. 60 (the "Wilson Motion to Dismiss"); Doc. 64 (the "Rodriguez Motion to Dismiss")].

The County Defendants, Aurora Officer Defendants, Defendant Coffman, and Defendant Rodriguez (collectively, the "Individual Defendants") move—with one exception[2]—to dismiss Plaintiffs' federal claims asserted against them in their individual capacities pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, also arguing that they are entitled to qualified immunity.  [Doc. 61; Doc. 62; Doc. 64; Doc. 66].  With the exception of Defendant Coffman, against whom no state law claims are asserted, the Individual Defendants also seek dismissal of Plaintiffs' parallel state law claims (Claims Six through Ten) against them for failure to state a claim.  [Doc. 62; Doc. 64; Doc. 66].  The County Defendants also challenge federal subject matter jurisdiction over the claims asserted against them, arguing that Plaintiffs lack standing.  [Doc. 62].[3]  Finally, Defendant Wilson moves to dismiss Plaintiffs' state law claims asserted against her, arguing that Plaintiffs fail to state a claim because Colo. Rev. Stat. § 13-21-131 is unconstitutional.  [Doc. 60].  These Motions are still pending before the presiding judge.

On January 19, 2021, Defendants filed a Motion to Stay that was subsequently denied by this Magistrate Judge.  [Doc. 68; Doc. 82].  The Parties then appeared before this court on March 1, 2021, and this court entered a Scheduling Order on March 3, 2021.  [Doc. 88; Doc. 89].  On

---

[2] Defendant Rodriguez "seeks dismissal of all Claims for Relief . . . with the single exception of the Fourth Amendment Claim as against [sic] Plaintiff Acker."  [Doc. 64 at 4].  Defendant Rodriguez states in her Motion to Dismiss that "[a] Motion for Summary Judgment will follow, [sic] regarding [Acker's] claim of excessive force under the Fourth Amendment[.]"  [*Id.* at 4 n.1].  In other words, Defendant Rodriguez has not moved to dismiss Claim Three as asserted against her by Plaintiff Acker.

[3] The County Defendants are the only Defendants to expressly move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See* [Doc. 60; Doc. 61; Doc. 62; Doc. 64; Doc. 66].

June 7, 2021, Defendants filed this instant Motion to Compel, seeking Plaintiffs' responses to four specific discovery requests to which Plaintiffs had asserted a First Amendment privilege: Interrogatory Nos. 6, 13, 14, and 16. [Doc. 109]. Defendants contend that the information sought by these Interrogatories is relevant and necessary to defend against the 10 separate claims of relief, against over 50 individuals and entities. [*Id.*]. As to Interrogatory Nos. 13 and 14, Defendants argue that Plaintiffs have waived any privilege by selectively disclosing the names of some individuals who attended the protest while asserting the privilege as to others – thereby wielding the First Amendment associational privilege as both a sword and shield. [Doc. 122 at 2–3].

Plaintiffs argue that forcing Plaintiffs to disclose the privileged information sought would discourage Plaintiffs from participating in protest activity, organizing protests and vigils, and associating with others in furtherance of movements, and that they "fear the very police brutality they were protesting should they disclose this information." [Doc. 116 at 3]. In addition, Plaintiffs contend that the information Defendants seek through these four Interrogatories is not relevant; not necessary to defend against Plaintiffs' lawsuit; and is available from other sources. [*Id.* at 14–18].

On Reply, Defendants argue that Plaintiffs have glossed over the threshold requirement that they make a prima facie showing that the First Amendment associational privilege applies and they cannot do so. [Doc. 122 at 1–2]. Defendants further contend that even if Plaintiffs have sufficiently established a prima facie showing, it does not apply to the discovery requests at issue for the same reasons that they have articulated in their affirmative Motion to Compel. *See generally* [*id.*].

## LEGAL STANDARDS

### I.       Rule 26(b)(1)

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery in this action. Fed. R. Civ. P. 26(b)(1). The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Id.* The applicable test is whether the evidence sought is relevant to any party's claim or defense and proportional to the needs of the case. *Id.* Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. In defining the scope of appropriate discovery, the Parties and the court are directed to consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

### II.      Privileges

Generally, federal common law governs privilege in a case that arises under federal question jurisdiction. Fed. R. Evid. 501. However, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has held that in cases involving both federal and state causes of action, "a federal court should look to state law in deciding privilege questions" for the state law claims. *Motley v. Marathon Oil Co*., 71 F.3d 1547, 1551 (10th Cir. 1995) (citing Fed. R. Evid. 501; *White v. American Airlines, Inc.*, 915 F.2d 1414, 1424 (10th Cir. 1990)). *But see* Notes of Committee on Judiciary, Senate Report 93–1277 (observing that "[b]asically, [the Rule] provides that in criminal and Federal question civil cases, federally evolved rules on privilege should apply

since it is Federal policy which is being enforced. [It is also intended that the Federal law of privileges should be applied with respect to pendant State law claims when they arise in a Federal question case.]"); *Vondrak v. City of Las Cruces*, 760 F. Supp. 2d 1170 (D.N.M. 2009) (holding that federal privilege law applies to both federal and state law claims when subject matter jurisdiction is premised on a federal question); *Joyce v. N. Metro Task Force*, No. 10-cv-00649-CMA-MJW, 2011 WL 1884618, at *3 (D. Colo. May 18, 2011) (same). Here, Plaintiffs invoke the court's federal question jurisdiction pursuant to 28 U.S.C. § 1331. [Doc. 20 ¶ 9]. Thus, this court applies the federal common law when considering Plaintiffs' invocation of privilege.

*First Amendment Associational Privilege.* The First Amendment of the United States Constitution protects "a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). To that end, the United States Supreme Court has long recognized that "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel Patterson* ("*NAACP*"), 357 U.S. 449, 460 (1958). To that end, the Supreme Court recognized that "compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restrain on freedom of association as forms of governmental action" and recognized a qualified privilege prohibiting compelled disclosure of affiliation when such disclosure infringes upon an individual's exercise of her First Amendment rights (made applicable to the states through the Fourteenth Amendment). *NAACP*, 357 U.S. at 462–63.

This First Amendment associational privilege may be applicable in the context of discovery orders. *See Granbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987). "The party claiming a

privilege always bears the initial burden of establishing the factual predicate for the privilege." *Amaya v. Bregman*, No. 14-cv-0599 WJ/SMV, 2016 WL 10296798, at *3 (D.N.M. May 13, 2016), *objections overruled*, No. CV 14-00599 WJ/SMV, 2016 WL 10516104 (D.N.M. June 23, 2016) (citing *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984) ("A party seeking to assert a privilege must make a clear showing that it applies.")).  Then, before ordering disclosure, the trial court is required to consider:

> (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information. The trial court must also determine the validity of the claimed First Amendment privilege. Only after examining all of these factors should the court decide whether the privilege must be overborne by the need for the requested information.

*Granbouche*, 825 F.2d at 1466–67 (citing *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir.1977)).

## ANALYSIS

### I.    Relevance and Proportionality

It is undisputed that the scope of discovery is limited to relevant, non-privileged information.  Fed. R. Civ. P. 26(b)(1).  But relevance alone does not govern discoverability. Instead, Rule 26(b)(1) clearly provides that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Accordingly, before proceeding to any analysis with respect to the application of the associational privilege by Plaintiffs, this court first considers whether the discovery sought by each Interrogatory should be produced pursuant to the balancing test of Rule 26(b)(1).

A.      Interrogatory No. 6

Interrogatory No. 6 inquires: "For the past five (5) years, IDENTIFY any prior or subsequent protest events or vigils YOU have attended, including the date, location, and reason for the protest." [Doc. 109-4 at 3–4]. Defendants argue that they are entitled to information related to other protests that Plaintiffs have attended because Plaintiffs are seeking injunctive relief, and "the fact as to whether any Plaintiff has actually attended any additional protests since the protest that is the subject of this lawsuit is relevant to whether Plaintiffs have standing to seek such relief." [Doc. 109 at 4]. Defendants further argue that this information is relevant to the court's determination as to whether Plaintiffs' rights have been chilled and to their alleged injuries and damages. [*Id.*].

Plaintiffs disagree, arguing that information regarding other specific protests, including date, time, and location, is simply not relevant to the issue of whether Plaintiffs have standing to bring their injunctive relief claims. [Doc. 116 at 16]. Plaintiffs further contend that the "chilling" element of the associational privilege analysis is an objective one, because "it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determine plaintiff persists in his protected activity." [*Id.* (citing *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001)].

On Reply, Defendants continue to argue that the information regarding both past and future protest events are necessary to their challenges to standing, injunctive relief, as well as to whether Plaintiffs' First Amendment rights were chilled. [Doc. 122 at 7–8]. Defendants also contend that this information is not ascertainable from any other source. [*Id*. at 8].

1.      **Pre-June 27, 2020 Protest Activity**

*Standing.*   First, this court notes that the only standing challenge currently raised is a facial one by the County Defendants, on the basis that Plaintiffs have failed to allege any specific claims or harms attributable to the County Defendants in any particularized manner and that Plaintiffs lack standing to seek injunctive relief because their request is based on alleged past conduct, rather than a continuing violation or a likelihood of future violations.  [Doc. 62 at 6–8].  Plaintiffs respond that they have adequately pleaded standing in their Amended Complaint, alleging facts that Defendants' unlawful use of force to stop Plaintiffs' peaceful protest at the event caused substantial harm to Plaintiffs, while chilling their speech and causing self-censorship in violation of their constitutional rights.  [Doc. 85 at 28–30].

When, as here, a plaintiff's First Amendment claim is based on chilled speech, *see* [Doc. 20 ¶ 234], the issue of standing is "particularly delicate," *see Rio Grande Foundation v. City of Santa Fe, N.M.*, 7 F.4th 956, 959 (10th Cir. 2021).  Thus, the Tenth Circuit has set forth a test for standing in chilled speech claims seeking prospective relief:[4]

> [P]laintiffs in a suit for prospective relief based on a "chilling effect" on speech can satisfy the requirement that their claim of injury be "concrete and particularized" by (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so because of a credible threat that [adverse consequences] will be enforced.

*Id.* (quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (en banc)).  But Defendants cite no authority—and this court could find none independently—for the proposition that Plaintiffs' protest activities <u>prior</u> to the underlying June 27, 2020 event are relevant

---

[4] Because standing implicates its subject matter jurisdiction, the court has an obligation to consider it even if not raised by the Parties, or in this case, raised by the Parties in the manner that the court frames it herein.  *See New England Health Care Emps. Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008).

to the inquiry of whether Plaintiffs suffered a cognizable injury-in-fact <u>on</u> June 27, 2020.  Nor do Plaintiffs appear to invoke their protest activities prior to June 27, 2020 as a factual basis for their affirmative claims.  Thus, this court concludes that Interrogatory No. 6, to the extent that it seeks information regarding protests prior to June 27, 2020 is not relevant and proportional to the needs of any standing inquiry.

*Damages and Injunctive Relief.*  To the extent that Defendants seek information regarding Plaintiffs' past protest activities as a benchmark as to whether their rights were chilled [*id.* at 7–8], to assess damages or injunctive relief, this court also is not persuaded that detailed information regarding every protest activity is relevant and proportional to the needs of the case.  Any monetary damages to Plaintiffs must be grounded in the injury and harm suffered as a result of the June 27, 2020 event—thus, past protest activities would not inform the damages analysis in this action.  *See Rock v. McCoy*, 763 F.2d 394, 398 (10th Cir. 1985) (observing the requirement of a causal connection between the acts of the defendants and the damages suffered by the plaintiff in a § 1983 case).  Similarly, this court finds an inadequate connection between any past protest conduct and the propriety of any injunctive relief against these Defendants.  As Defendants have noted, any prospective injunctive relief against the City of Aurora is in order to address ongoing violations of federal law, not to be limited to past conduct.  *See Hull v. Colo. Bd. of Governors of Colo. State Univ. Sys.*, 805 F. Supp. 2d 1094, 1113 (D. Colo. 2011).  Thus, this court is unpersuaded that any protest conduct by Plaintiffs prior to June 27, 2020 "has a tendency to make a fact more of less probable than it would be without evidence and the fact is of consequence in determining the action."  Fed. R. Evid. 401.

2.      **Post-June 27, 2020 Protest Activity**

As to post-June 27, 2020 protest activity, this court again finds that such activity is not particularly probative to the issue of standing.  Plaintiffs concede that Defendants may inquire about their future plans for protest activity, as both relevant and not intruding on the First Amendment associational privilege.  [Doc. 116 at 15].  But Plaintiffs contend that information regarding other specific protests is not relevant to either the relief sought or the "chilling" element of Plaintiffs' First Amendment claims.  [*Id.* at 15–16].  On Reply, Defendants continue to contend that the information sought through Interrogatory No. 6 is "relevant, necessary, and crucial for evaluating Plaintiffs' standing to seek injunctive relief" as well as to Plaintiffs' damages, if any. [Doc. 122 at 8].

For the reasons set forth above, this court concludes that Plaintiffs' post-June 27, 2020 protest activity is not sufficiently relevant and proportional under Rule 26(b)(1) to any damages arising from the June 27 event.  In addition, while Plaintiffs' post-June 27, 2020 protest activity might be relevant to determining whether Plaintiffs <u>actually refrained</u> from protest activity due to Defendants' alleged constitutional violations, this court respectfully disagrees that such information is particularly probative in this action.  The relevant inquiry as to a First Amendment violation is not whether the alleged conduct actually chilled a particular individual from continuing to engage in that activity; rather, the relevant inquiry is whether the alleged conduct "<u>would chill a person of ordinary firmness</u> from continuing to engage in that activity." *See Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001) (emphasis added).

Having found that Interrogatory No. 6 falls outside the scope of discovery as defined by Rule 26(b)(1), this court does not reach the Parties' arguments with respect to the application of

the First Amendment associational privilege here.  Thus, this court **DENIES** the Motion to Compel as to Interrogatory No. 6.

### B.      Interrogatory Nos. 13 and 14

Interrogatory No. 13 seeks "the name, ADDRESS, and phone number of all PERSONS YOU know who attended the protest."  [Doc. 109-4 at 12].  Interrogatory No. 14 calls for each Plaintiff to "[s]pecifically describe and IDENTIFY by name, ADDRESS, and telephone number each and every PERSON whom YOU claim possesses knowledge of the facts relevant to the claims listed in your Complaint, including for each PERSON identified, a detailed description of your understanding of the PERSON's knowledge of the INCIDENT."  [*Id.* at 13].  Defendants contend that "[i]nformation about witnesses to the circumstances underlying a complaint are *per se* relevant and narrowly tailored. Moreover, this information is limited and proportional in that Defendants only seek information about individuals each Plaintiff knew attended or witnessed the events underlying the Complaint."  [Doc. 109 at 6–7 (emphasis in original)].  Defendants further contend that the First Amendment associational privilege does not apply, and if it does, Plaintiffs have waived such privilege because Plaintiffs Fisher, Mayes, and Mallory have all identified individuals in response to Interrogatory No. 14.  [*Id.* at 7].

Plaintiffs concede the general relevance of the information sought by Interrogatory No. 14. [Doc. 116 at 16].  Nevertheless, they argue that the First Amendment associational privilege applies; that they have identified individuals upon whom they intend to rely to give testimony in support of their claims; and that "[i]dentifying other vigil participants who attended the vigil anonymously, and will not be called upon in support of Plaintiffs' case, is not crucial to Defendants' defense of this case."  [*Id.*].  In support of their contentions, Plaintiff Minter provided an affidavit detailing her concerns about responding to the discovery request.  [Doc. 116-1].

On Reply, Defendants argue that the court "need no engage in weighing the *Granbouche* factors, because Plaintiffs have waived the privilege by selectively disclosing individuals in response to Defendants' discovery requests. [Doc. 122 at 8]. Defendants further contend that despite the information available through body-worn camera or security footage, they do not have access to comparable information through other means. [*Id.* at 9–10].

This court respectfully agrees with Defendants that their own access to information about other participants in the June 27, 2020 event is not an appropriate objection to responding to Interrogatory Nos. 13 and 14. But this court finds that Interrogatory No. 13 that seeks the name, address, and phone number of all persons known to Plaintiffs who attended the protest—without regard to whether such individuals were witnesses to the events that give rise to the claims set forth in the operative pleadings—is not relevant and proportional to the needs of the case. The mere fact that an individual attended the June 27, 2020 event does not have "a tendency to make a fact more of less probable than it would be without the evidence." Fed. R. Evid. 401. To the extent that Defendants seek the identity of individuals who attended and witnessed the events underlying the Amended Complaint, or otherwise have factual information that support the allegations in the Amended Complaint, such information is captured by Interrogatory No. 14. Thus, this court **DENIES** the Motion to Compel as to Interrogatory No. 13.

As to Interrogatory No. 14, Plaintiffs concede, and this court independently concludes, that the information regarding witnesses to actions of both Plaintiffs and Defendants on June 27, 2020 is relevant to both the claims and defenses in this case.[5] And this court is not persuaded that the

---

[5] While not argued by the Parties, this court finds that Interrogatory No. 14 could be read very broadly to include the identification of any individual known to Plaintiffs to have knowledge of the any fact alleged in the Amended Complaint, including but not limited allegations of police conduct by the City of Aurora outside of the events of June 27, 2020. Such an interpretation would be overly broad, and accordingly, this court interprets Interrogatory No. 14 to be limited to the

fact that Defendants may be able to ascertain the identities of witnesses to the events giving rise to the action through their own knowledge or through other sources acts as a complete bar to responding.  Indeed, the Federal Rules of Civil Procedure make clear that discovery vehicles can be complimentary or even cumulative, not mutually exclusive.  *See Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 641 (D. Kan. 1999) (holding that parties "may seek information through a variety of discovery vehicles," and "the Rules are clearly intended to be cumulative, as opposed to alternative or mutually exclusive.").  Thus, with respect to Interrogatory No. 14, as limited herein, this court concludes it must proceed to consider whether the First Amendment associational privilege applies to protect information that is otherwise relevant.[6]

## C.      Interrogatory No. 16

Interrogatory No. 16 asks the Plaintiffs to "**IDENTIFY** all objective means by which an individual would **IDENTIFY YOU** as identifying with Antifa, Socialism, Communism, and/or Anarchism or other political affiliation."   [Doc. 109-4 at 15].   Defendants contend that this Interrogatory is related to Paragraph 172 of the Amended Complaint that alleges "[t]he law enforcement officers based their decision to declare the assembly unlawful, use force, and use escalated force because of their hostility towards, and their perceptions regarding the political affiliations of those in the crowd, including but not limited to their perceptions of crowd members as identifying with Antifa, Socialism, Communism, and/or Anarchism," [Doc. 20 ¶ 172].   [Doc. 109 at 8].  Defendants further argue that the First Amendment associational privilege could not apply, because Defendants do not ask Plaintiffs to identify any individuals, but rather seek

---

identification of individuals and their respective knowledge about the allegations of conduct occurring at the June 27, 2020 event.

[6] Rule 26(b)(1) also requires the information sought to be proportional to the needs of the case to be discoverable.  Fed. R. Civ. P. 26(b)(1).  This court finds that proportionality is subsumed, and better analyzed, in the court's consideration of the *Granbouche* factors discussed below.

information about how law enforcement officers would have been aware of Plaintiffs' respective affiliations.  [*Id*. at 9].

In Response, Plaintiffs do not address Defendants' arguments regarding the inapplicability of the First Amendment associational privilege.  *See* [Doc. 116 at 17].  Instead, Plaintiffs argue that the information sought by Defendants through Interrogatory No. 16 is not relevant, because "[w]hether or not Plaintiffs objectively were wearing clothing identifying them as part of any of the groups listed is irrelevant."  [*Id.*].  Further, Plaintiffs argue that "[v]iewpoint discrimination and retaliation are about the state of mind of Defendants."  [*Id.*].

On Reply, Defendants contend that Plaintiffs assert allegations that Defendants took unreasonable action against them based on impermissible viewpoint discrimination based on their affiliation with groups such as Antifa, Socialism, Communism, and/or Anarchism; and thus, this discovery is fundamental to their defenses to Plaintiffs' First Amendment claims, that accuse Defendants of violating Plaintiffs' First Amendment right of freedom of speech and assembly based on improper content and/or viewpoint restriction (Claim I) and retaliation for the appropriate exercise of their First Amendment rights (Claim II).  [Doc. 122 at 11–12; Doc. 20 ¶¶ 251–72].

This court respectfully disagrees with Defendants' contention that Plaintiffs assert that Defendants took unreasonable action against them based on <u>actual affiliation</u> with groups such as Antifa, Socialism, Communism, and/or Anarchism.  Instead, this court concludes that a fair reading of Paragraph 172 of the Amended Complaint alleges that the Defendants' actions were taken based on "their perceptions of crowd members as identifying with Antifa, Socialism, Communism, and/or Anarchism."  [Doc. 20 ¶ 172].  Indeed, the title of the section is entitled "The Law Enforcement Officers Used Escalated and Excessive Force Because Of The Perceived Political Affiliation of The Vigil Attendees."  [*Id.* at 39].  The allegations of the Amended

Complaint, taken together, aver that the mere attendance of the June 27, 2020 event by the Plaintiffs caused Defendants to ascribe certain beliefs to them, i.e., that they were a "large group of violent, Antifa agitators." *See generally* [Doc. 20]; [*id.* ¶ 176].

Whether or not Plaintiffs were actually affiliated with Antifa, Socialism, Communism, and/or Anarchism is of no moment; rather, the proper inquiry is into Defendants' motivation— regardless of whether or not it was correct. *Cf. Heffernan v. City of Paterson, N.J.,* 578 U.S. 266 (2016) ("When an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983—even if, as here, the employer makes a factual mistake about the employee's behavior."). Thus, insofar as Plaintiffs allege that Defendants took unreasonable action against them based on perceived affiliation, this court finds that information regarding "objective indicia" of affiliation solicited by Interrogatory No. 16 is not relevant or proportional to the needs of the case. Accordingly, this court **DENIES** the Motion to Compel as to Interrogatory No. 16.

## II.    Application of Associational Privilege

This court now turns to considering whether Plaintiffs can invoke the First Amendment associational privilege to avoid substantively responding to Interrogatory No. 14.

### 1.    "Association"

Defendants contend that Plaintiffs' invocation of the First Amendment associational privilege in response to Interrogatory No. 14 vastly expands such privilege to avoid identifying eyewitnesses to the events underlying the Complaint and potential class members who attended a public protest. [Doc. 109 at 7]. To that end, Defendants argue that "there is no association asserting the privilege and no membership lists sought to be protected." [*Id.*]. Plaintiffs respond

that they "are not willing to provide identifying information for those who wish to remain anonymous … [a]nd[] the caselaw supports their decision not to do so."  [Doc. 116 at 16–17].  In making such argument, Plaintiff relies upon *Int'l Action Ctr. v. U.S.*, 207 F.R.D. 1 (D.D.C. 2002).

In *Int'l Action Ctr.*, the United States propounded similar discovery request(s),[7] seeking "[i]dentities of persons who anonymously participated in demonstration activity with Plaintiffs on January 20, 2001."  *Id.* at 2.  Interestingly, the court noted that "[i]t appears from the record that Plaintiffs are willing to provide some or all information responsive to this request."  *Id.* at n.5.  Nevertheless, that court ruled that, to the extent the Government sought information including the identity of individuals who attended the protests,

> [t]his is exactly the kind of information the First Amendment is designed to protect. There can be little doubt that such public identification of individuals who never intended their participation in First Amendment activity to thrust them into the harsh glare of the limelight is calculated to chill future political dissent and discourage participation in other protest activity.

*Id.* at 3–4.  In so ruling, the *Int'l Action Ctr.* court did not address whether the invocation of the associational privilege requires a defined organization and/or membership list.

It is well-settled that there is no general right to association, *see City of Dallas v. Stanglin,* 490 U.S. 19, 25 (1989), and Defendants attempt to distinguish *Int'l Action Ctr* and suggest that the First Amendment associational privilege does not apply here because there is no organized association or defined membership list sought here.  [Doc. 109 at 7; Doc. 122 at 9 n.4].  Indeed, other courts have described the application of the First Amendment associational privilege as one extended to a "limited cache" of documents.  *See Sherwin-Williams Co. v. Spitzer,* No. 1:04CV185(DNH/RFT), 2005 WL 2128938, at *5 (N.D.N.Y. Aug. 24, 2005).  While this suggestion has some visceral appeal (particularly given the relative ease of application), this court

---

[7] The *Int'l Action Ctr.* court expressly clarified that it was "not conducting an interrogatory-by-interrogatory review."  *Int'l Action Ctr.*, 207 F.R.D. at 2.

finds that Plaintiffs are not attempting to invoke a general right to association. Unlike the plaintiffs in *Staglin*, Plaintiffs clearly allege that they and the other participants in the June 27, 2020 event were taking a position on public questions—including, but not necessarily limited to, the propriety of Aurora Police Department's treatment of Mr. McClain and other Black and brown persons and the need for police reform. *See generally* [Doc. 20]. Nor does this court conclude that the First Amendment associational privilege requires a pre-defined entity. At the core, the First Amendment associational privilege derives from an <u>individual's</u> First Amendment right to associate, not any type of right held by the <u>organization</u>:

> The Association both urges that it is constitutionally entitled to resist official inquiry into its membership lists, and that it may assert, on behalf of its members, <u>a right personal to them</u> to be protected from compelled disclosure by the State of their affiliation with the Association as revealed by the membership lists. We think that <u>petitioner argues more appropriately the rights of its members</u>, and that its nexus with them is sufficient to permit that it act as their representative before this Court.

*NAACP*, 357 U.S. at 458–59 (emphasis added).

Thus, this court respectfully rejects Defendants' argument that applying the First Amendment associational privilege in the context of Interrogatory No. 14 would "vastly expand the associational rights First Amendment privilege" [Doc. 109 at 7] and does not find the proffered distinction from *Int'l Action Ctr.* persuasive. Instead, this court finds that because the discovery request implicates the ability for individuals to collectively advocate for police accountability and reform in Colorado, and particularly of the Aurora Police Department, the First Amendment associational privilege may apply. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 622, 104 S. Ct. 3244, 3252, 82 L. Ed. 2d 462 (1984) ("Consequently, we have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate

with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.").

### 2.     Prima facie showing

The Parties agree that, under Tenth Circuit law, a party seeking to assert the First Amendment associational privilege must make a prima facie showing that the privilege applies. *See* [Doc. 116 at 4; Doc. 122 at 1]; *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 488 (10th Cir. 2011) (holding that "the party claiming a First Amendment privilege in an objection to a discovery request bears the burden to make a prima facie showing of the privilege's applicability."); Black's Law Dictionary 1310 (9th ed. 2009) (defining "prima facie case" as "[a] party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor.").  The Tenth Circuit has not articulated "the precise quantum of proof necessary to establish a prima facie case of privilege under the First Amendment," but instead held that "a party claiming a First Amendment chilling affect meets its burden by submitting, for example, affidavits which describe harassment and intimidation of a group's known members, and the resulting reluctance of people sympathetic to the goals of the group to associate with it for fear of reprisals." *See In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d at 491 (citations and internal quotation marks omitted).

To meet this burden, Plaintiffs have submitted an Affidavit of Ms. Minter ("Minter Affidavit"), in which she details her concerns regarding Defendants' actions and with disclosing the names of individuals present at the June 27, 2020 event. [Doc. 116-1].  Among other assertions, Ms. Minter attests that she believes that being forced to reveal the identity of those who were present would cause individuals not to be willing to participate in other protests for police reform and that she has personal knowledge of friends and fellow organizers who have been arrested by

Aurora police officers simply for organizing and attending protests.   [Doc. 116-4 ¶¶ 6, 9]. Defendants take issue with the sufficiency of the Minter Affidavit, pointing to its singularity and its lack of foundation, characterizing it as "speculative."   [Doc. 122 at 5–6].

This court focuses upon the portions of the Minter Affidavit that is relevant to Interrogatory No. 14, i.e., "[s]pecifically describe and IDENTIFY by name, ADDRESS, and telephone number each and every PERSON whom YOU claim possesses knowledge of the facts relevant to the claims listed in your Complaint, including for each PERSON identified, a detailed description of your understanding of the PERSON's knowledge of the INCIDENT."   [Doc. 109-4 at 13].   Ms. Minter attests that she is fearful of revealing the identities of other protesters and organizers because it might expose them to risks of criminal charges, physical injury, or even death at the hands of Aurora police.   [Doc. 116-1 ¶ 8].   She further attests that if she were to name those individuals, she would lose trust in the community and it would severely impact her ability to organize future protests and associate with those in Aurora who are campaigning for police reform. [*Id.* ¶ 9].   She indicates that she knows "many people who do not want the government, and particularly Aurora, to know who they are and whether they attend protests," for fear of losing their job or being arrested.   [*Id.* ¶ 10].

While in no way undermining Ms. Minter's subjective and genuine concerns, these statements are insufficient to satisfy the prima facie standard, i.e., "a reasonable probability that compelling disclosure will lead to these types of threats, harassment, or reprisal."[8]   *See Wyoming v. U.S. Dep't of Agr.*, 239 F. Supp. 2d 1219, 1237 (D. Wyo. 2002) (citations omitted), *vacated as moot*, 414 F.3d 1207 (10th Cir. 2005).   Ms. Minter provides no personal, concrete examples of

---

[8] In so ruling, this court expressly does not pass on the substantive merits of any First Amendment cause of action asserted by Plaintiffs.

threats, harassment, or reprisal to her.  [Doc. 116-1].  The closest she comes is her rhetorical questions of whether she will be the "next Brianna Taylor" or that she could lose her ability to work with kids if she were to be arrested on felony charges.  [*Id.* ¶¶ 5, 12].  Again, this court does not diminish these concerns; it merely finds that "[g]eneralized fears, however, do not seem to represent the more severe degree of threats, harassment, and reprisal envisioned by the Supreme Court in *NAACP v. Alabama*."  *See McCormick v. City of Lawrence, Kan.*, No. 02-2135-JWL, 2005 WL 1606595, at *9 (D. Kan. July 8, 2005)*; Sherwin-Williams Co. v. Spitzer*, No. 1:04-CV185(DNH/RFT), 2005 WL 2128938, at *5 (N.D.N.Y. 2005).

Further, this court understands that anonymous protesters who attended the June 27, 2020 event and witnessed the conduct cannot remain so if they submit affidavits in support of Plaintiffs' Response or are identified by Plaintiffs through responding to Interrogatory No. 14.  But at least three of the Plaintiffs have already voluntarily disclosed information responsive to Interrogatory No. 14, and Plaintiffs have and will also disclose witnesses upon whom they intend to rely pursuant to Fed. R. Civ. P. 26(a)(1) and (e).  Specifically, Plaintiffs Fisher, Mayes, and Mallory responded to Interrogatory No. 14, "without waiving" their respective objections.[9]  [Doc. 109-5 at 10–13;

---

[9] Even if Plaintiffs could satisfy the prima facie standard and establish the applicability of the First Amendment associational privilege pursuant to the *Granbouche* factors, in general, a party forfeits a privilege, including the First Amendment associational privilege, when she exposes the privileged information.  *Kisser v. Coalition for Religious Freedom*, Case No. 95-MC-0174, 1995, WL 422786 (E.D. Pa. July 13, 1995) (citing *U.S. v. Salerno*, 505 U.S. 317, 323 (1992)).  The burden of establishing waiver generally lies with a party seeking to overcome the privilege – which would be consistent with the allocation of burdens contemplated by the Tenth Circuit for the application of the First Amendment privilege discussed above.  *Cf. U.S. EEOC v. Cont'l Airlines, Inc.*, 395 F. Supp. 2d 738, 742 (N.D. Ill. 2005) (discussing the burden associated with waiver of the federal deliberative process privilege).  This court knows of no authority, and Plaintiffs cite none, that such exposure can be immunized by stating that the response is "subject to and without waiving" any invocation of privilege.  By responding to Interrogatory No. 14, Plaintiffs Fisher, Mayes, and Mallory have waived any First Amendment associational privilege and Plaintiffs fail to argue or identify any authority to suggest otherwise.

Doc. 109-6 at 12–14; Doc. 109-7 at 11–13].  Plaintiffs further indicate that they "have identified those witnesses who may be relied upon to support their claims."  [Doc. 116 at 16].  Yet none of these other individuals has stepped forward with a sworn affidavit or declaration with personal, concrete examples of threats, harassment, or reprisal for protesting police brutality or advocating for police reform.  *See In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d at 491.

Finally, this court recognizes that Plaintiffs are concerned with identifying non-parties who wish to remain anonymous to the greater public.  But unlike other circumstances in which the First Amendment privilege has been applied to internal information that is confidential to an organization, this court notes that all of these individuals appeared in public at the June 27, 2020 event, with no guarantees of anonymity or confidentiality.  Concerns of non-parties regarding repercussions of their activism (such as actions by their employers) can be addressed and/or mitigated through an appropriate protective order.

For these reasons, this court respectfully **GRANTS** the Motion to Compel as to Interrogatory No. 14, subject to an appropriate designation under the Protective Order [Doc. 123] and/or a separate protective order.

III.    **Reasonable Fees and Costs**

Finally, this court briefly addresses Plaintiffs' request for reasonable fees and costs.  [Doc. 116 at 20].  Plaintiffs invoke Rule 37(a)(5)(B) as a basis for such award, which expressly requires the court to assess fees and costs unless "the opposing party's nondisclosure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(b)(5)(B).  Although Defendants did not prevail entirely on their Motion to Compel, this court finds that Defendants did not lack a reasonable basis in law or in fact to bring this Motion to Compel.  Indeed, the Motion to Compel raised material questions regarding whether individuals could invoke the

First Amendment associational privilege in these circumstances.  For these reasons, this court finds that an award of expenses is not justified.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)     Defendants' Motion to Compel [Doc. 109] is **GRANTED IN PART and DENIED IN PART**;

(2)     Plaintiffs are **COMPELLED** to respond to Interrogatory No. 14 no later than **October 8, 2021**, subject to a protective order if appropriate;

(3)     All other relief sought by Defendants' Motion to Compel is **DENIED**;

(4)     The Parties' Stipulated Motion to Stay Proceedings Pending Ruling on Defendants' Joint Motion to Compel [Doc. 136] is **DENIED as moot**; and

(5)     To the extent the Parties seek an extension of time based on the timing of this Order, they are **DIRECTED** to meet and confer and file an appropriate motion.

DATED:  September 29, 2021                    BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge