**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 20-cv-02172-RMR-NYW

LINDSAY MINTER, et al., on behalf of themselves and others similarly situated,

      Plaintiffs,

v.

CITY OF AURORA, COLORADO, et al.

      Defendants.

---

## OPINION AND ORDER ON MOTIONS TO DISMISS

---

This matter is before the Court on the Defendants' respective motions to dismiss. This Order specifically addresses the following motions:

      **Aurora Officer Defendants' Motion to Dismiss** (ECF 66)[1];

      **Arapahoe and Jefferson County Officer Defendants' Motion to Dismiss** (ECF 62);

      **Defendant Jeanette Rodriguez's Partial Motion to Dismiss** (ECF 64);

      **Defendant Chief Vanessa Wilson's Partial Motion to Dismiss** (ECF 60); and

      **Defendant Mayor Michael Coffman's Motion to Dismiss** (ECF 61).

The motions have been fully briefed and are ripe for review. For the reasons that follow, the motions are **GRANTED in part** and **DENIED in part** as stated herein.

---

[1] As amended at ECF 74.

I.    **BACKGROUND**[2]

The Plaintiffs bring this putative class action against the Defendants for their alleged violations of Plaintiffs' state and federal constitutional rights during a violin vigil organized in memory of Elijah McClain. The Plaintiffs in this action are individuals who organized and/or attended the vigil.

The violin vigil took place in Aurora, Colorado on June 27, 2020, on the Great Lawn in Aurora's Municipal Complex. Throughout the day, before the vigil began, there were a number of peaceful protests, including a rally for justice and a youth march in Elijah's memory. The violin vigil began at around 8:00 pm. Around 8:30 pm, an announcement was made by law enforcement officers that the gathering was an unlawful assembly. Aurora Police Department ("APD") officers, assisted by officers from the Arapahoe County Sheriff's Office, and Jefferson County Sheriff's Office (collectively, "County Officers") organized a line near APD headquarters, on the north end of the Great Lawn.[3] Other officers assembled north of the stage that had been set up for the musicians. There were approximately one hundred and fifty officers in both of these lines. Plaintiffs allege that the officers were dressed in full militarized gear. The officers began to advance on the

_____

[2] Unless otherwise specified, the facts included in this section are the well-pleaded facts included in Plaintiffs' Amended Complaint, ECF 20. For the purposes of this motion, the Court accepts these well-pleaded allegations as true.

[3] Plaintiffs allege that officers from the Adam's County Sheriff's Department also assisted APD, but neither the Adam's County Sheriff's Department nor individual Adam's County officers are named Defendants in this lawsuit.

crowd. The Plaintiffs allege that the officers sprayed those gathered with pepper spray, threw chemical agent canisters into the crowd, shot foam and/or rubber bullets at attendees, shot bean bag rounds at attendees, and struck, hit, jabbed, prodded, shoved, and/or pushed with batons those attendees who did not immediately retreat. The officers moved all attendees off the Great Lawn.

The Plaintiffs now bring ten causes of action against a number of individuals that they contend were involved in violating their constitutional rights. In Claims One, Two, Six, and Seven, the Plaintiffs allege violations of their right to free speech and assembly pursuant to the United States and Colorado constitutions. In Claims Three and Eight, the Plaintiffs allege excessive force in violation of the Fourth Amendment to the United States Constitution and section Seven of the Colorado Constitution. In Claims Four and Nine, the Plaintiffs allege excessive force in violation of due process protections in the United States and Colorado Constitutions. In Claims Five and Ten, the Plaintiffs assert due process violations under the United States and Colorado Constitutions.

Motions to dismiss the Plaintiffs' complaint in whole or in part were filed by the Aurora Officers ("Aurora Officers' Motion to Dismiss"), the Arapaho and Jefferson County Officers ("County Officers' Motion to Dismiss"), Jeanette Rodriguez ("Jeanette Rodriguez's Motion to Dismiss"), Chief Vanessa Wilson ("Vanessa Wilson's Partial Motion to Dismiss"), and Mayor Michael Coffman ("Mayor Michael Coffman's Motion to Dismiss"). While the motions to dismiss address some overlapping topics, the Court considers each motion individually.

## II.    DEFENDANT AURORA OFFICERS' MOTION TO DISMISS

The individual Aurora Defendant Officers filed their motion to dismiss at ECF 66. The Aurora Officers seek dismissal of all claims against them. In support of this request, the Aurora Officers argue that the Amended Complaint fails to meet the requirements of Fed. R. Civ. P. 8 and that the Plaintiffs have failed to state a plausible claim for relief under Rule 12(b)(6). The Aurora Officers also argue that they are entitled to qualified immunity regarding Plaintiffs' federal claims.  For the reasons set forth herein, the Aurora Officers' Motion to Dismiss is **GRANTED** as to Plaintiffs' Claims Four and Nine and **DENIED** as to the remaining claims.

### A.  The Amended Complaint Complies With The Requirements of Rule 8

Fed. R. Civ. P. 8 instructs that "[a] pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Aurora Officers argue that the "Plaintiffs' Amended Complaint asserts neither allegations that any identified individual Aurora Officer harmed any named Plaintiff nor does it contain any underlying facts to support the claims for relief asserted by any individual Plaintiff against any named individual Aurora Officer." ECF 66, p. 6. "In the

4

absence of facts linking the actions of particular law enforcement personnel to particular attendees," the Aurora Officers argue, "there can be no individualized assessments as to whether an officer's use of force was reasonable under the particularized circumstances. Therefore, Plaintiffs' Amended Complaint fails to provide adequate notice to the Aurora Officers as to the nature of the claims for relief pending against them." *Id.* at 7.

1. Plaintiffs' Amended Complaint is not Prolix

The Aurora Officers argue that the Amended Complaint fails to meet the Rule 8 requirement that a complaint include a "short and plain" statement showing that the pleader is entitled to relief. Specifically, the Aurora Officers argue that Rule 8 "does not condone prolix complaints." *Id.* at 9. The Aurora Officers cite to a string of cases where courts have dismissed complaints that were "lengthy, confusing, ill-organized," "sprawling chronicle[s]." *See id.* at 9. But the cases cited by the Aurora Officers are inapposite here. Each of the cases cited on page 9 of the Aurora Officers' Motion involved a pro se complainant, and in each of those cases the court identified significant problems with the complaints' clarity, organization, or length.

While the Plaintiffs' Amended Complaint here may be lengthy, it does not suffer from the deficiencies identified in the cases cited by the Aurora Officers. The Amended Complaint is reasonably organized, and its length does not impose any unfair burden on the litigants or on the Court.

2. Plaintiffs' Amended Complaint Provides Adequate Notice to Defendants

The Aurora Officers further argue that the Amended Complaint fails to meet the requirements of Rule 8 because it "fails to distinguish what alleged acts are attributable

5

to whom, what conduct by any named individual Aurora Officer was directed at any named Plaintiff and what underlying factual support exists for any claim for relief asserted by any identified plaintiff against any identified individual defendant." *Id.* at 11.

The Aurora Officers rely heavily on *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008). In *Robbins*, the Tenth Circuit stated that

> [C]omplaints in § 1983 cases against individual actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. . . .Therefore it is particularly important in such circumstances that the complaint make it clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Id.* at p. 1249-50 (emphasis in original) (cited by the Aurora Officers at ECF 66, p.10).

The court in *Robbins* stated that "the complaint's use of [] the collective term 'Defendants' or a list of the defendants named individually. . . with no distinction as to what acts are attributable to whom, [made] it impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins*, 519 P.3d at 1250.

The instant case differs from *Robbins* in a number of key respects. First, the Amended Complaint here differentiates between actions taken by individual defendants and actions allegedly taken by the City of Aurora. Further, the individual Aurora Officer Defendants are law enforcement officials sued in their individual capacities. Finally, the Amended Complaint alleges that all of the Aurora Defendants were present at the incident and acted in concert. Unlike *Robbins*, this is not a case where the allegations against the individual Defendants are "entirely different in character and therefore ... mistakenly

6

grouped in a single allegation." *See Bark v. Chacon*, 2011 WL 1884691, at *5 (D. Colo. May 18, 2011) (Distinguishing *Robbins* where the plaintiffs differentiated between actions taken by individual defendants and municipal defendants, where defendants were law enforcement officials sued in their individual capacities, where all allegations related to a single incident, and where all of the individual defendants were alleged to have been at the scene); *Mwangi v. Norman*, No. 16-CV-00002-CMA-NYW, 2016 WL 7223270, at *9 (D. Colo. Dec. 13, 2016) ("based on the circumstances alleged in this case, it would be unfair to require Plaintiff to allege 'which specific Defendant committed which specific act during the incident in question'"). The Tenth Circuit, citing to *Robbins*, also made clear that "[h]eightened pleading is not required in § 1983 cases, rather the pleadings must make clear the grounds on which the plaintiff is entitled to relief." *Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008) (citations omitted) (finding that plaintiff's allegations were "sufficiently clear to put defendants on notice that the alleged constitutional violations were predicated, in part, on their alleged failure to intervene"). *Id.* at 1165.

The Court recognizes that the complaint must allege an affirmative link between the alleged constitutional violation and the specific individual's participation in that violation. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1156–57 (10th Cir. 2001). The Amended Complaint does include individualized allegations setting forth conduct and personal participation by each of the Aurora Officers. Paragraphs 118-159 of the Amended Complaint identify the conduct of each Aurora Officer that Plaintiffs contend violated their rights. For example, the Plaintiffs allege that Defendant Commander Redfern "oversaw and directed Defendants who pushed Plaintiffs off the

7

Great Lawn… [and] ordered a group of Defendants to throw smoke cannisters and other chemical agents indiscriminately into the crowd. . ." ECF 20, ¶¶ 118-119. The Plaintiffs allege that Defendant Officer Moss "struck multiple Plaintiff Class Members with his baton and repeatedly deployed OC spray into their faces." *Id.* at ¶ 124. Given the circumstances, including the allegations regarding the use of chemical agents, the detail provided by the Plaintiffs is adequate here. The Plaintiffs have alleged that there were "approximately one hundred and fifty law enforcement officers" present at the event "in full militarized gear (including helmets, shields, facemasks, and body armor) …" *Id.* at ¶ 37. It would be unfair, and potentially impossible, to require the Plaintiffs to provide additional details, particularly at the motion to dismiss stage. The facts alleging the violations experienced by each Plaintiff in the Amended Complaint, coupled with the facts regarding each Aurora Officer Defendant, provide sufficient notice to Defendants of the claims against them and "make clear the grounds on which the plaintiff is entitled to relief." *Fogarty*, 523 F.3d at 1164.

The Aurora Officers have thus failed to establish an entitlement to dismissal under Rule 8.

### B.  Failure to State a Claim on Which Relief Can be Granted.

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). In deciding a motion under Rule

8

12(b)(6), the court must "accept as true all well-pleaded factual allegations ... and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (*quoting Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. at 678 (quotation omitted).

In their arguments relating to each of Plaintiffs' claims, the Aurora Officers echo the arguments made vis a vi Rule 8, suggesting that the Plaintiffs have failed to state a claim against them because "personal liability must be based on personal involvement in the alleged constitutional violation." ECF 66, p. 16 (quotations omitted); *see also Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir.1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). First, as stated previously, the Plaintiffs have adequately alleged facts providing notice to the Aurora Officers of the alleged constitutional violations. Furthermore, the Tenth Circuit has instructed that "[p]ersonal involvement is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him. We have recognized at least two other ways in which a plaintiff may show a defendant's involvement. An officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983 . . . [and] supervisors may be liable for a subordinate's constitutional deprivations under certain circumstances." *Fogarty v. Gallegos*, 523 F.3d at 1162. The

9

Amended Complaint not only includes allegations regarding the conduct of each Aurora Officer defendant, but it also includes allegations that each Aurora Officer was indeed present at the vigil and engaged generally in the efforts to disperse the crowd. Thus, to the extent that the Aurora Officers seek dismissal of Plaintiffs' claims for an alleged failure to allege individualized facts, the Court finds such argument unpersuasive at this stage.

1. First Amendment Freedom of Speech and Assembly Claims

The Plaintiffs have alleged violations of their right to free speech and assembly under the United States and Colorado Constitutions (Claims One and Six).

The First Amendment provides that all citizens have a right to hold and express their personal political beliefs. *See Cohen v. California*, 403 U.S. 15, 24 (1971). "[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. Fed. Election Com'n*, 572 U.S. 185, 203 (2014). The Supreme Court "has repeatedly held that police may not interfere with orderly, nonviolent protests merely because they disagree with the content of the speech or because they simply fear possible disorder." *Jones v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006) (*citing Cox v. Louisiana*, 379 U.S. 536, 550 (1965)). The Supreme Court has expressly held that "[t]he right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908 (1982).

The Plaintiffs allege a violation of their First Amendment rights to free speech and assembly because the Aurora Officers' restriction of their speech was content based and was not narrowly tailored to a compelling government interest. ECF 86, pp.15-16.

### a. *Plaintiffs Have Adequately Alleged That The Aurora Officers' Actions Were Content Based*

A government, including a municipal government vested with state authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.*  The principal inquiry in determining content neutrality, in speech cases generally, and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

The Plaintiffs here have alleged that the Aurora Officers "based their decision to declare the assembly unlawful, use force, and use escalated force because of their hostility toward, and their perceptions regarding the political affiliations of those in the crowd, including but not limited to their perception of crowd members as identifying with Antifa, Socialism, Communism, and/or Anarchism." ECF 20, ¶ 172. The Plaintiffs also allege that, prior to declaring the assembly unlawful, "Defendants took into account that those attending the violin vigil held signs, wore clothing, and engaged in speech that the law enforcement officers associated with these or other political and social affiliations

11

against which they were hostile." *Id.* at ¶ 173. The Plaintiffs allege that, the morning of the vigil, the Defendants were advised "that a large group of violent, Antifa agitators would be attending the day-long protests to incite violence." *Id.* at ¶ 176.

At the motion to dismiss stage, the Court not only accepts as true all well-pleaded facts, but also draws all reasonable inferences in favor of plaintiff to decide whether they plausibly entitle plaintiff to relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Considering the facts alleged here, a factfinder could reasonably infer that the defendants based their decision to declare the assembly unlawful, to enforce that order, and to use physical force, because of the speaker and/ or content of the speech at issue. The Court specifically looks to the allegation that the defendants labeled the attendees as "violent, Antifa agitators" prior to the vigil and the allegations regarding the peaceful nature of the crowd prior to the Defendants' finding that the assembly was unlawful. The Plaintiffs' allegations are thus sufficient, at this early stage, to survive the Aurora Officers' motion to dismiss.

### b. *Plaintiffs Have Adequately Alleged That The Aurora Officers' Actions Were Not Narrowly Tailored*

For claims based on content-based restrictions of free speech, the government must establish that "the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. at 171. The Aurora Officers do not substantively engage with this analysis. The Court finds, however, that the Plaintiffs have alleged facts at least sufficient for them to survive a motion to dismiss on this issue. The Aurora Officers suggest that they dispersed the crowd to preserve public safety, but the only fact identified by them is that, at one point during the vigil, "then Interim

Police Chief Vanessa Williams texted a Councilmember stating that people in the crowd were 'gathering rocks.'" ECF 20, ¶ 79; ECF 100, p. 9. The Plaintiffs have adequately alleged facts suggesting that the declaration that the vigil was "unlawful"—and the subsequent measures taken to remove protestors—was not narrowly tailored to a legitimate interest.

In response to the Plaintiffs' argument here, the Aurora Officers argue that "the authority [Plaintiffs] rely on does not support their allegations that they had a First Amendment right to assemble once law enforcement personnel began to enforce the dispersal order following the unlawful assembly declaration." ECF 100, p. 10. The Aurora Officers argue that "the First Amendment does not prohibit dispersing assemblies that are violent, 'pose a clear and present danger of imminent violence, or . . . *violat[e] some other law in the* process." ECF 100, p. 11 (citing *Collins v. Jordan*, 110 F.3d 1363, 1371-72 (9th Cir. 1996)). The Aurora Officers argue that they did not infringe the Plaintiffs' First Amendment rights because "[i]n the period following the unlawful assembly declaration and dispersal order, Plaintiffs had no corresponding First Amendment right to remain the area of the unlawful assembly. Accordingly, the Plaintiffs suffered no First Amendment injury as a matter of law." *Id.*

This argument, however, overlooks the thrust of the Plaintiffs' claim—that is, that the act of declaring the vigil unlawful, and the actions taken to enforce that declaration, violated the Plaintiffs' constitutional rights. The Aurora Officers' argument here is circular—they ask the Court to find that they did not infringe the Plaintiffs' rights when they declared the demonstration to be unlawful because the Plaintiffs ceased enjoying

13

First Amendment protections when the officers declared the demonstration to be unlawful. Such a finding would be improper and unfounded. The Supreme Court, in *Gregory v. City of Chicago*, 394 U.S. 111, 112 (1969), instructed that a demonstration, "if peaceful and orderly, falls well within the sphere of conduct protected by the First Amendment." Merely declaring a demonstration "unlawful" does not strip demonstrators of their First Amendment rights.[4]

For these reasons, the Court finds that the Plaintiffs have adequately alleged violations of their First Amendment rights to free speech and assembly for purposes of surviving a motion to dismiss.

---

[4] At certain points in their briefing, the Aurora Officers appear to suggest that they cannot be found to have violated the Plaintiffs' rights because the dispersal order was issued by Chief Wilson. This argument is not specifically articulated, however, and the Aurora Officers do not specifically cite to case law suggesting that they cannot be found liable under the circumstances. To the extent that the Aurora Officers suggest that they cannot be held liable because they were "just following orders," that argument is not persuasive at this stage. As discussed in further detail, *infra*, an officer may not blindly rely on the conclusions of fellow officers. Reliance must be "objectively reasonable." *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1260 (10th Cir. 1998). Courts considering similar defenses have made clear that officers are not entitled to qualified immunity simply because they were following orders. *See e.g.*, *Bunkley v. City of Detroit, Michigan*, 902 F.3d 552, 562 (6th Cir. 2018) ("*Plausible* instructions from a superior or fellow officer support qualified immunity where, *viewed objectively in light of the surrounding circumstances*, they could lead *a reasonable officer to conclude* that the necessary legal justification for his actions exists. . .") (citing *Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003)).

2.  <u>First Amendment Retaliation Claims</u>

The Plaintiffs allege that the Aurora Officers used unlawful force against them in retaliation for Plaintiffs' exercise of their First Amendment rights.

The Tenth Circuit examines First Amendment retaliation claims under *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000), which requires inquiry into whether (1) plaintiffs were engaged in constitutionally protected activity; (2) defendants caused the plaintiffs to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) defendant's actions were motivated by plaintiffs' protected activity. *Abay v. City of Denver*, 445 F. Supp. 3d 1286, 1292 (D. Colo. 2020) (citing *Buck v. City of Albuquerque*, 549 F.3d 1269, 1292 (10th Cir. 2008)).

The Plaintiffs here have alleged facts sufficient to establish that they were engaged in constitutionally protected activities when the Aurora Officers declared the assembly unlawful and took efforts to disperse the crowd. The Plaintiffs have also alleged facts sufficient to establish that the Aurora Officers caused the Plaintiffs to suffer injury that would chill a person of ordinary firmness from continuing to engage in that activity. "The issue on this element is whether Defendants caused an injury to [Plaintiffs], and whether it was of a type that would 'chill' or deter an ordinary person from future constitutionally-protected expression." *Brandt v. City of Westminster*, 300 F. Supp. 3d 1259, 1280 (D. Colo. 2018). The Court finds that the Plaintiffs have alleged sufficient facts to meet the required showing for this element. The Plaintiffs here allege that the defendants shot projectiles into the crowd, sprayed chemical agents, and used physical force against the vigil attendees. The Plaintiffs specifically allege that they were pepper sprayed in the face

15

and struck with a baton. *See e.g.*, ECF 20, ¶¶ 97-102. The risk of being subject to such treatment is of the type that would chill similar protected speech, and the Plaintiffs have thus made the required showing on this element.

The Aurora Officers' Motion to Dismiss this claim focuses on their argument that the Plaintiffs have not adequately alleged that the Aurora Officers' actions were motivated by Plaintiffs' protected speech. The Aurora Defendants note that the Plaintiffs engaged in "the rally, march, and other events earlier in the day and they fail to allege there were any negative repercussions from any Aurora Officers related to the events of the day." ECF 100, p. 12. The Aurora Officers argue that their actions to disperse the crowd "were directly linked to conduct and behavior by some in the crowd[,] not 'peaceful' speech and certainly not the speech itself." *Id.*

The alleged conduct by the Aurora Officers here is at least arguably out of proportion with the "conduct and behavior" that they allegedly relied upon to justify dispersing the crowd. A reasonable jury could find that an observation that an unknown number of attendees may have been "gathering rocks," does not itself justify the forceful removal of all vigil attendees from the Great Lawn. *Hartman v. Moore*, 547 U.S. 250, 250 (2006) ("When nonretaliatory grounds are insufficient to provoke the adverse consequences, retaliation is subject to recovery as the but-for cause of official injurious action offending the Constitution."); *see also Black Lives Matter Seattle-King Cty. v. City of Seattle, Seattle Police Dep't*, 466 F. Supp. 3d 1206, 1214 (W.D. Wash. 2020) ("[t]he use of indiscriminate weapons against all protesters—not just the violent ones—supports

the inference that [officers'] actions were substantially motivated by Plaintiffs' protected First Amendment activity.")

The Court finds that, for the purposes of withstanding a motion to dismiss, the Plaintiffs have adequately alleged facts supporting a claim for retaliation in violation of the First Amendment.

### a. Aurora Officers are not Entitled to Qualified Immunity On The § 1983 First Amendment Claims

Section 1983 "allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under the color of state law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). The defense of qualified immunity is available to individual defendants named in a § 1983 action, and "shields public officials… from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). The doctrine of qualified immunity seeks to balance the twin facts that civil actions for damages may "offer the only realistic avenue for vindication of constitutional guarantees," and that such suits nevertheless "can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638, (1987) (internal citation omitted).

 After a defendant asserts qualified immunity, the plaintiff must establish "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2)

that the right was clearly established at the time of the defendant's unlawful conduct." *Estate of Booker*, 745 F.3d at 411.[5]

In their motion to dismiss, the Aurora Officers engage only with the first prong of this analysis. They argue that the Plaintiffs failed to demonstrate a constitutional violation because they failed to state a claim for a violation of their First Amendment rights as a matter of law. Specifically, the Aurora Officers argue that they are entitled to qualified immunity because the Plaintiffs failed to plead facts showing that the Aurora Officers violated Plaintiffs' rights, failed to plead facts showing that the Aurora Officers' actions were motivated by protected speech, and failed to show how any Aurora Officer was personally involved in the order to disperse. ECF 66, p. 24.  For the reasons set forth, *supra*, the Court finds that the Plaintiffs have adequately alleged a violation of their First Amendment rights, and the Court must thus consider the second prong of the qualified immunity analysis.

In their Reply in support of their motion to dismiss, ECF 100, the Aurora Officers argue that they are entitled to qualified immunity because "there is no clearly established law that the use of the line to disperse the crowd of which Plaintiffs were a part – executed pursuant to an unlawful assembly declaration – violates First Amendment rights to speech and assembly." *Id.* p. 13. The Aurora Officers argue that "[t]he Plaintiffs have not identified

---

[5] The Court notes that qualified immunity does not apply to Plaintiffs' state law claims against the Aurora Officers. *See* Colo. Rev. Stat. § 13-21-131.

any controlling precedent circumscribing law enforcement's ability to forcibly disperse a crowd after an unlawful assembly is declared when the crowd does not voluntarily comply." *Id.* p. 14.

The Aurora Officers again rely on the fact that they declared the assembly "unlawful," while ignoring the Plaintiffs' argument that it was that declaration and execution thereof that formed the basis of the constitutional violation. The Court finds that the Plaintiffs' rights here were clearly established.

The Supreme Court has held that police may not interfere with orderly, nonviolent protests merely because they disagree with the content of the speech or because they simply fear possible disorder.  *See Cox v. Louisiana*, 379 U.S. at 550 (noting that "constitutional rights may not be denied simply because of hostility to their assertion or exercise" and overturning convictions of individuals protesting arrest of civil rights activists). The Supreme Court has thus applied the "clear and present danger" test to protests to determine whether police interference with speech is constitutional. The Court has explained "Speech is often provocative and challenging.... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Houston v. Hill*, 482 U.S. 451, 461 (1987) (citation omitted). The Court has similarly explained that "[t]he right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." *NAACP v. Claiborne Hardware Co*., 458 U.S. 886, 908 (1982).

19

While sitting on the Second Circuit, now-Justice Sonya Sotomayor considered the "clear and present danger" test articulated by the Supreme Court. In the protest context, she observed, the Supreme Court has already well articulated the contours of the right and made clear that the police may not interfere with demonstrations unless there is a "clear and present danger" of riot, imminent violence, interference with traffic or other immediate threat to public safety. *Jones v. Parmley*, 465 F.3d at 57. "Neither energetic, even raucous, protesters who annoy or anger audiences, nor demonstrations that slow traffic or inconvenience pedestrians, justify police stopping or interrupting a public protest." *Id.* at 58 (citing *Cox v. Louisiana*, 379 U.S. at 546–47, 549 n. 12 (group of protesters who provoked a visceral, angered response and slowed traffic did not jeopardize their speech rights)); *Edwards v. South Carolina*, 372 U.S. 229 (1963) ("clear and present danger" means more than annoyance, inviting dispute or slowing traffic)). "Were we to accept defendants' view of the First Amendment, we see little that would prevent the police from ending a demonstration without notice for the slightest transgression by a single protester (or even a mere rabble rouser, wholly unconnected to the lawful protest)." *Jones v. Parmley*, 465 F.3d at 57.

Plaintiffs allege that the vigil attendees were peaceful and had received permission to hold the vigil in the park. The Aurora Officers allege that the crowd at the vigil became "increasingly aggressive, agitated, and unpredictable," but the facts alleged suggest merely that one or more individuals may have been "gathering rocks." The Aurora Officers point to paragraph 106 of the Amended Complaint to support an argument that "the situation could become volatile and dangerous," but paragraph 106 merely describes

20

protesters "near the fence that was blocking the entrance to the Aurora Police Department Headquarters and every time the law enforcement officers would change positions, the protesters would step back, put their hands up, and say 'don't shoot.'" Taken as a whole, the facts as alleged by the Plaintiffs reveal an orderly, peaceful crowd. Nothing in the Amended Complaint suggests that the vigil attendees posed a "clear and present danger" to the officers or to their fellow citizens. A reasonable factfinder could thus find that the Aurora Officers' actions violated the Plaintiffs' clearly established constitutional rights.

The Aurora Officers finally argue that, "[b]ecause there is no binding authority limiting the scope or extent of police authority to enforce a lawful dispersal order in the First Amendment context, it would not be clear to a reasonable officer that the enforcement action taken to disperse Plaintiffs on the day of the rally violated their right to peaceably assemble or that in so doing such actions would be deemed retaliatory in nature." ECF 100, p. 14. There remain questions of material fact, however, regarding whether the Aurora Officers' purported bases for issuing the dispersal order actually comported with the "clear and present" danger test. As alleged by the Plaintiffs, the facts do not suggest a threat of imminent danger or harm such that a reasonable officer would have believed he or she could disperse the entire protest. Under the Plaintiffs' alleged facts, there is no basis for finding that any of the vigil attendees were breaking the law or any other regulation at the time that the gathering was declared unlawful.

The Court thus cannot find at this time that the Aurora Officers are entitled to Qualified Immunity on Plaintiffs' Freedom of Speech and Assembly claims.

3.  <u>Excessive Force- Fourth Amendment and Colorado Constitution</u>

The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals. When determining whether police officers have employed excessive force in the arrest context, the Supreme Court has instructed that courts should examine whether the use of force is objectively unreasonable "in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). When considering a claim of excessive force, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396. *Graham* established three factors for courts to consider: (1) the severity of the crime for which the suspect was seized, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing. *Id*. Whether a particular use of force was reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

The first *Graham* factor, "the severity of the crime at issue," *id*., weighs in Plaintiffs' favor. Accepting Plaintiffs' well-plead allegations as true, the Plaintiffs were engaged in a peaceful, nonviolent protest when the Defendants used force against them. Even accepting that the Plaintiffs may have "plac[ed] themselves between the police and the musicians, lock[ed] their arms, and st[ood] their ground," this conduct does not constitute a severe crime. The Tenth Circuit has instructed that "[a]lthough 'an officer can effect an

22

arrest for even a minor infraction, [a] minor offense—at most—support[s] the use of minimal force.'" *Davis v. Clifford*, 825 F.3d 1131, 1135 (10th Cir. 2016).

The second factor, whether the Plaintiffs posed an immediate threat to the safety of the officers or others, also weighs in Plaintiffs' favor. None of the facts alleged suggest that the vigil attendees were armed or sought to cause injury or harm to the officers or other protestors. *Id.* (finding that second factor weighed in favor of plaintiff where there was "no evidence that [plaintiff] had access to a weapon or that she threatened to harm herself or others.").

The third *Graham* factor, "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight," 490 U.S. at 396, also favors the Plaintiffs. As the Aurora Officers themselves point out, none of the Plaintiffs were arrested, nor is there any indication that the Plaintiffs were actively evading the Officers.

The Aurora Officers do not engage substantively with the *Graham* test. They instead argue that the reasonableness inquiry required by *Graham* cannot be conducted here because the Plaintiffs "have failed to put [the Aurora Officers] on notice of exactly '*who* is alleged to have done *what* to *whom*.'" ECF 66, p. 17. As set forth, *supra*, the Amended Complaint contains sufficient factual information setting forth the conduct of each Aurora Officer for the allegations to survive a motion to dismiss, and those same facts allow the Court to engage in the *Graham* analysis here. As alleged in the Amended Complaint, the force allegedly used by the Aurora Officers includes "deploying a pepper foam fogger," "shoving" protestors, "deploy[ing] OC spray," striking protestors with batons, and shooting protestors with 40mm baton rounds and 12 gauge beanbag rounds. S*ee*

23

*e.g.*, ¶¶ 119-159. The allegations provide a sufficient basis for the court to apply the *Graham* test. The Court thus finds that the Plaintiffs have adequately alleged that the Aurora Officers used excessive force against them.

### a. Aurora Officers Are Not Entitled To Qualified Immunity On Plaintiffs' Excessive Force Claims

Having found that the Plaintiffs have adequately alleged a constitutional violation, the Court turns to whether the law was "clearly established" at the time of the alleged violation. In *Fogarty*, the Tenth Circuit considered the use of pepper balls and tear gas on peaceful protestors. There, the Tenth Circuit held that "a reasonable officer would have been on notice that the *Graham* inquiry applies to the use of these methods just as with any other type of pain-inflicting compliance technique. We find it persuasive that, in prior cases, we have assumed that the use of mace and pepper spray could constitute excessive force." 523 F.3d at 1161. As in *Fogarty*, the facts alleged in the Amended Complaint support a finding that all the *Graham* factors weigh in Plaintiffs' favor and "this case is not so close that our precedents would fail to portend the constitutional unreasonableness of [the Aurora Officers'] alleged actions." *Id.* at 1162. The Court thus finds, consistent with *Fogarty*, that existing case law gave the Defendants fair warning that their conduct violated the Plaintiff's constitutional rights.

### 4. Plaintiffs Have Failed to State a Claim For Excessive Force Under The Fourteenth Amendment

The Aurora Officers argue that the Plaintiffs' Fourteenth Amendment Claims fail to state a constitutional violation. In *Graham*, the Supreme Court instructed that "all claims

24

that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." 490 U.S. at 395. The Aurora Officers thus argue that the appropriate excessive force analysis is therefore pursuant to the Fourth Amendment only, and the Plaintiffs' Fourteenth Amendment claims must therefore be dismissed. ECF 66, p. 26. The Plaintiffs do not appear to dispute this. In their opposition to the Aurora Officers' motion, Plaintiffs state: "AODs assert that Plaintiffs' excessive force claims are not cognizable under the due process clause because the Fourth Amendment provides the appropriate framework for such claims. [] Plaintiffs are in agreement, however Plaintiffs' excessive force claim may – if not covered under the Fourth Amendment – be analyzed under the Fourteenth Amendment." ECF 86, p. 23 n.7. Because the Court finds that Plaintiffs' claims are properly analyzed under the Fourth Amendment, its Fourteenth Amendment excessive force claim, Claim Four, is properly dismissed. The parties do not distinguish between the state and federal due process claims. Because the Plaintiffs here agree that their excessive force claims are properly analyzed under Fourth Amendment jurisprudence, the Court also dismisses the Plaintiffs' due process excessive force claim under Colo. Rev. Stat. § 13-21-131, Claim Nine.

     5.  <u>Due Process</u>

While the Aurora Officers seek dismissal of the Amended Complaint in its entirety, they do not specifically argue that the Plaintiffs have failed to state a claim for the due process violations set forth in Plaintiffs' Claims Five and Ten. These claims center on the

allegation that the order issued by the APD was unconstitutionally vague because it did not specify the area from which dispersal was required. Because the Aurora Officers do not specifically address these claims, and because the Court sees no other reasons that the claims should be dismissed at this stage, the Court declines to dismiss Claims Five and Ten.

6. Conclusion

For the reasons herein, the Aurora Officers' motion to dismiss is **GRANTED in part** and **DENIED in part**. The motion is granted as to Plaintiffs' Fourteenth Amendment and Colorado Constitution due process/excessive force claims (Claims Four and Nine). The motion is denied as to all remaining claims.

## III. ARAPAHOE AND JEFFERSON COUNTY DEFENDANTS' JOINT MOTION TO DISMISS

The Arapaho and Jefferson County Defendants ("County Officers") filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The County Officers are law enforcement officers employed by the Arapahoe and Jefferson County Sheriffs' Offices who responded to assist the City of Aurora Police Department pursuant to the state's mutual aid statutes, Colo. Rev. Stat. §§ 29-5-103, -104, and -108. For the reasons stated herein, the County Officers' Motion to Dismiss is **GRANTED** as to Plaintiffs' Claims Four, Five, Nine, and Ten and **DENIED** as to all remaining claims.

### A. Plaintiffs Have Standing To Bring Suit

The County Officers first argue that the Plaintiffs lack standing to bring the claims set forth in the Amended Complaint. The County Officers' argument here echoes the Rule

8 argument made by the Aurora Defendants. The County Officers specifically argue that "[the] failure to allege any claims attributable to the County Officers means Plaintiffs do not have standing to bring these claims and therefore requires dismissing the County Officers for lack of subject matter jurisdiction." ECF 62, p. 6. The County Officers acknowledge that the Amended Complaint includes allegations specific to each of the County Officers, but they maintain that the allegations are insufficient to establish subject matter jurisdiction over the County Officers.

At its "irreducible constitutional minimum," standing has three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, a plaintiff must suffer an "injury in fact" that is actual or imminent. *Id*. Second, the injury must be fairly traceable to the challenged action of the defendant. *Id*. Third, it must be likely that the injury will be redressed by the relief requested. *Id.* at 561.

Looking at the allegations in the Amended Complaint, the Court finds that the Amended Complaint alleges facts sufficient to establish standing. All of the Plaintiffs allege that their First Amendment rights were violated resulting from the efforts and force used to disburse the crowd at the violin vigil.  The Tenth Circuit has instructed that "a chilling effect on the exercise of a plaintiff's First Amendment rights may amount to a judicially cognizable injury in fact, as long as it arises from an objectively justified fear of real consequences." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1088 (10th Cir. 2006) (internal citations omitted).

This injury is traceable to the actions of the County Officers. The Amended Complaint alleges that all County Officers were present at and engaged in efforts to clear

27

the crowd at the violin vigil. The eleven paragraphs identified by the County Officers in their motion identify specific actions taken by each of the County Officer Defendants. The County Officers argue that these specific allegations against them are insufficient to confer standing because the alleged actions are not sufficiently tied to the named Plaintiffs. Consider the allegations against Defendant Bullard, ACSO: The Plaintiffs allege that "Bullard hit multiple members of the Plaintiff Class in the chest with his baton (including hitting one female Plaintiff Class Member in the chest while she wept in front of him)." ECF 20, ¶ 160. The County Officers' argument suggests that this allegation is insufficient to confer standing because the named Plaintiffs do not allege that Defendant Bullard hit *one of them* in the chest with his baton. But this argument would require the Court to improperly narrow the alleged injury in fact. Here, a reasonable factfinder could determine that being among a group of protesters where individuals are hit in the chest with a baton could have a chilling effect on the exercise of First Amendment rights.

The Plaintiffs here allege that the County Officers violated their First Amendment rights when they dispersed the crowd without a lawful basis and in using force to do so. The Amended Complaint adequately alleges that each of the named Defendants was present at the vigil, enforced the order, and either used physical force or failed to intervene when the other Defendants used physical force. For purposes of establishing standing, these allegations are sufficient to support a finding of causation. Finally, the Court finds

that the Plaintiffs' injuries will be redressed by the requested relief. The Court thus finds

that the Plaintiffs have adequately alleged standing.[6]

### B. Failure to State a Claim on Which Relief Can Be Granted

The County Officers argue that the Amended Complaint fails to meet the

requirements of Rule 8. For the reasons discussed, *supra*, the Court disagrees.

––––––––––––––––––––––

[6] While the Court finds that the standing analysis is the same for all named plaintiffs, a specific analysis of Ms. Minter's standing may be illustrative. Ms. Minter has adequately alleged an injury in fact. She alleges a chilling of her First Amendment rights from the defendant's dispersal of the crowd at the vigil and a violation of her Fourth Amendment rights from the defendants' use of force. These injuries can be traced to the County Officers because she alleges facts sufficient to support a finding that the County Officers enforced the dispersal order and used or failed to intervene to stop the use of excessive force against her and the other protesters. Ms. Minter specifically alleges that she was "overcome by chemical agents in the air." Ms. Minter need not identify the particular officer who sprayed the chemical agent in order to establish the second element of standing. Indeed, the facts alleged suggest that numerous defendants may have sprayed pepper spray or other chemical agents, and it would likely not be possible for Ms. Minter to identify the specific defendant or defendants who sprayed the chemicals that caused her injury. Ms. Minter has established the second prong of the standing analysis because she has alleged that the County Officers either sprayed the chemical agents, or they failed to intervene when other defendants did. Thus, for both her First and Fourth Amendment claims, Ms. Minter has adequately tied her alleged injury to the County Officer Defendants. Finally, Ms. Minter's injuries will be redressed by a favorable decision here. The Plaintiffs have therefore established standing. *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co*., 765 F.3d 1205, 1212 (10th Cir. 2014) ("Because we hold that [one named plaintiff] has Article III standing … we need not decide whether the other named Plaintiffs[] have standing to serve as class representatives.") (citing *Horne v. Flores*, 557 U.S. 433, 446–47 (2009); *Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252, 264 & n. 9 (1977) ("[W]e have at least one individual plaintiff who has demonstrated standing.... Because of the presence of this plaintiff, we need not consider whether the other individual ... plaintiffs have standing to maintain the suit.")).

1. <u>First Amendment Freedom of Speech and Assembly Claims</u>

### a. The Plaintiffs Have Adequately Alleged Content-Based Restrictions

The County Officers argue that that the Plaintiffs have failed to state an actionable claim of viewpoint discrimination in violation of the First Amendment. The County Officers rely heavily on *Pahls v. Thomas*, 718 F.3d 1210 (10th Cir. 2013) to support their argument that the claims against the County Officers must be dismissed because the Plaintiffs have failed to establish that each individual defendant acted with a viewpoint discriminatory purpose.

The Court in *Pahls* instructed that "[b]ecause § 1983 and *Bivens* are vehicles for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants. It is particularly important that plaintiffs make clear exactly *who* is alleged to have done *what* to *whom*, as distinguished from collective allegations. When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive voice showing that his rights were violated will not suffice." *Id.* at 1225-1226 (citations and quotations omitted).

*Pahls* is distinguishable at this early stage. First, as discussed, supra, the Amended Complaint includes allegations setting forth the allegedly unconstitutional conduct of each named defendant. These allegations sufficiently set forth the "who," "what," and "to whom" to allow the claims to survive a motion to dismiss. The *Pahls* opinion also considered the claims at the summary judgment stage. At the motion to

dismiss stage, however, the Court must accept the well-pleaded allegations in the complaint as true. The *Pahls* opinion is devoid of evidence like the facts alleged in the Amended Complaint. *See e.g.*, ECF 20, ¶ 173 ("Defendants took into account that those attending the violin vigil held signs, wore clothing, and engaged in speech that the law enforcement officers associated with these or other political and social affiliations against which they were hostile"); *Id.* at ¶ 176 (The Defendants were advised before the vigil "that a large group of violent, Antifa agitators would be attending the day-long protests to incite violence"). While the Court does not dispute the applicability of the *Pahls* analysis, it finds that the Amended Complaint includes allegations sufficient for the Court to find that the County Officers acted with a viewpoint-discriminatory purpose when they used force to disperse the vigil attendees.

### b. The Plaintiffs Adequately Allege That The Restriction Was Not Narrowly Tailored

For claims based on content-based restrictions of free speech, the government must establish that "the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. at 171. The County Officers do not substantively engage with this analysis. The Court finds that the Plaintiffs have adequately alleged that the restriction was not narrowly tailored for the reasons set forth in the analysis of the Aurora Officers' Motion to Dismiss.

### 2. First Amendment Retaliation

The County Defendants dedicate little argument specifically to the merits of the Plaintiffs' retaliation claim. The substance of the argument, however, mirrors the

argument set forth by the Aurora Officers. For the reasons set forth *supra*, the Court finds that the County Officers have not established that they are entitled to dismissal of Plaintiffs' retaliation claims.

### 3. Due Process Violations

The County Defendants argue that the Plaintiffs have failed to state a claim against them for federal and state due process violations (Claims Five and Ten), which are premised on the allegation that the orders issued by the Aurora Police Department are vague, not clearly defined, arbitrary, and lacking in legal authority. "It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits...." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).

The County Officers do not raise arguments related to the propriety of the order itself, but they argue that the Plaintiffs have failed to state a claim against them because they did not issue the orders underpinning the due process claim. In response to this argument, the Plaintiffs focus on the County Defendants' enforcement of the allegedly unconstitutional order, but they do not engage substantively with the County Defendants' argument that it was the APD who issued the order.

The Court here agrees with the County Defendants and finds that the Plaintiffs have not alleged facts supporting a cause of action against the County Defendants for due process violations. There are no facts suggesting that the County Officers made the decision to issue the dispersal order or to find the protest to be unlawful. Indeed, the Amended Complaint states that "Arapahoe, Jefferson, and Adams County personnel

32

were, at all times, operating under the control of AOD and Defendant Wilson pursuant to Colorado's Mutual Aid Statute…" The County Defendants' motion to dismiss is granted as to Claims Five and Ten.

### 4.   Excessive Force Claims

The County Officers argue that this Court should dismiss the Plaintiffs' excessive force claims for failure to comply with Rule 8. For the reasons already stated, the Court finds that the Amended Complaint complies with Rule 8 and thus declines to dismiss the Amended Complaint on these grounds. The County Officers' remaining arguments also mirror those asserted by the Aurora Officers, and the Court finds that the County Officers are not entitled to dismissal of the excessive force claims for the same reasons set forth previously. The application of the *Graham* factors, as analyzed previously, is equally applicable to the County Officers.

For the reasons previously set forth, however, the Court finds that the County Defendants are entitled to dismissal of the Plaintiffs' excessive force claims brought pursuant to the due process clauses of the United States and Colorado Constitutions.

### 5.   County Officers Are Not Entitled To Qualified Immunity

The County Officers have not established that they are entitled to Qualified Immunity on the Plaintiffs' claims remaining against them. As set forth herein, the Court finds that the Plaintiffs have adequately alleged facts to support their free speech, retaliation, and excessive force claims.  The Court thus finds that the Plaintiffs have met the first prong of the qualified immunity analysis. So, too, does the Court find that the rights at issue were clearly established, for the reasons stated previously.

33

The County Officers' argument differs from the Aurora Officers' argument in that the County Officers seek to invoke the fellow officer rule. The County Officers specifically argue that the Plaintiffs' First Amendment claims fail as a matter of law because the County Officers were entitled to rely on their commanding officers' decisions to issue a dispersal order. The County Defendants argue that "Plaintiffs affirmatively allege that APD command staff made the decision to issue the dispersal order. [] As a result, the County Officers' reliance on the order and use of some degree of force. . . was neither unreasonable nor unconstitutional." ECF 62, p. 17.

The Supreme Court has explained that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and . . . officers . . . cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information." *United States v. Hensley*, 469 U.S. 221, 231 (1985). Therefore an "officer who acts in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable." *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1260 (10th Cir. 1998) (quotations and citations omitted).

In order to invoke the fellow officer rule, however, the County Defendants must establish that they *actually did* rely on another officer's information. There are no facts here, however, suggesting that any County Officers ever relayed information to, or received information from, fellow officers based on personal observation of dangerous behavior. The Tenth Circuit has instructed that the fellow officer rule does not apply in the absence of such information. *See Fogarty v. Gallegos*, 523 F.3d at 1157, n.10 ("As no

34

officer has admitted relaying information to, or receiving information from, fellow officers based on personal observation of Fogarty's behavior, we have no occasion to apply this rule"); *see also Baptiste v. J.C. Penney Co*., 147 F.3d at 1260 (denying officer defendants' motion for summary judgment in part because "there was a genuine issue of material fact whether Officer Martin actually relied on Officer Hernholm's probable cause determination.")

Even if the County Officers had identified such evidence, the facts alleged in the Amended Complaint, when viewed in the light most favorable to the Plaintiffs, could cause a reasonable person to find that the County Officers' alleged reliance on the dispersal order was objectively unreasonable. The fellow officer rule "does not protect deliberate, reckless, or grossly negligent reliance on the flawed conclusions of a fellow officer," *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 88 (10th Cir. 2014), and another officer's "erroneous probable cause determination" will not "transform [an] unreasonable belief that probable cause existed...into a reasonable belief*," Stearns v. Clarkson*, 615 F.3d 1278, 1285 (10th Cir. 2010). One officer's reliance on information provided by another "must be objectively reasonable." *Baptiste*, 147 F.3d at 1260.

The Amended Complaint alleges facts suggesting that the violin vigil was a peaceful event attended by families and children. As discussed, *supra*, the facts do not suggest that the County Officers had any reason to believe that the vigil attendees constituted a clear and present danger to the officers or to other citizens. The County Officers were at the vigil and could see that the event was peaceful. A reasonable

factfinder could thus find, based on the facts alleged, that the County Officers' reliance on the dispersal order was unreasonable.

For the reasons stated herein, the County Officers' Motion to Dismiss is **GRANTED** as to Plaintiffs' Claims Four, Five, Nine, and Ten and **DENIED** as to all remaining claims.

## IV.   DEFENDANT JEANETTE RODRIGUEZ'S MOTION TO DISMISS

Defendant Rodriguez seeks dismissal of claims against her, "with the single exception of the Fourth Amendment Claim as against Plaintiff Acker." ECF 64, p. 4. Defendant Rodriguez is an officer with the Arapahoe County Sheriffs' Office. While Defendant Rodriguez chose to file a separate motion to dismiss, she has not identified facts or circumstances suggesting that she is entitled to relief that her fellow County Officers are not. The Courts' ruling on Defendant Rodriguez's motion therefore incorporates much of the analysis performed with regard to the County Officers' Motion to Dismiss. For the reasons stated herein, Defendant Rodriguez's Motion to Dismiss is **GRANTED** as to Claims Four, Five, Nine, and Ten and **DENIED** as to the remaining claims.

### A. Free Speech/ Retaliation Claims

Defendant Rodriguez argues that Plaintiffs have failed to state a claim for First Amendment violations because they failed to plead facts showing that Defendant Rodriguez was personally involved in any dispersal order. Like the County Officer Defendants, Defendant Rodriguez relies on *Pahls* in support of her arguments. The Court incorporates its earlier analysis of *Pahls* herein and finds that Defendant Rodriguez is not

36

entitled to dismissal of Plaintiffs' Free Speech/Retaliation claims for the same reasons set forth *supra.*

### B.  Excessive Force Claims

So, too, does Defendant Rodriguez's argument with regard to Plaintiffs' excessive force claims mirror that advanced by the County Officers and the Aurora Officers. Defendant Rodriguez argues that the Plaintiffs failed to allege that Defendant Rodriguez used force against them, and therefore failed to show personal involvement. Defendant Rodriguez's motion to dismiss Plaintiffs' excessive force claims pursuant to the Fourth Amendment to the United States Constitution and C.R.S. 13-21-131 (Claims Three and Eight) is denied for the reasons set forth, *supra.*

Defendant Rodriguez's motion is granted, however, as to the Plaintiffs' excessive force claims brought pursuant to the Due Process Clause of the United States and Colorado Constitutions (Claims Four and Nine).

### C.  Due Process Claims

Defendant Rodriguez's motion is also granted as to Plaintiffs' Due Process claims (Claims Five and Ten), for the reasons set forth, *supra.*

Defendant Rodriguez's Motion to Dismiss is therefore **DENIED** as to Claims One, Two, Three, Six, Seven, and Eight. Defendant Rodriguez's Motion to Dismiss is **GRANTED** as to Claims Four, Five, Nine, and Ten.

### V.    CHIEF VANESSA WILSON'S PARTIAL MOTION TO DISMISS

Defendant Wilson seeks partial dismissal of Plaintiffs' complaint. Defendant Wilson specifically seeks dismissal of the state law claims against her brought pursuant to C.R.S.

§ 13-21-131. Defendant Wilson argues that C.R.S. § 13-21-131, as enacted, violates the

Equal Protection Clause of the Fourteenth Amendment and is thus unconstitutional.

Defendant Wilson challenges the constitutionality of C.R.S. § 13-21-131 on its

face. Defendant Wilson argues:

> Prior to … the passage of C.R.S. § 13-21-131, the Colorado Constitution had no Section 1983 analog whereby citizens could sue government officials for alleged violations of state law constitutional rights. ELEIA, which became law on June 19, 2020, created such cause of action as to defendant "peace officers," as defined by C.R.S. § 24-31-901(3), but only to the extent they are employed by a "local government" (i.e., a political subdivision, such as a city or county). [] This limiting language has the effect of excluding members of the Colorado State Patrol ("CSP") from the law's civil/personal liability provision. Because this provision treats these state officials differently than other similarly situated law enforcement officers (i.e., Defendant Wilson, *et al.*) and because there is no rational basis for this distinction, it violates the guarantee of equal protection afforded by the Fourteenth Amendment to the Constitution of the United States and should be overturned.

ECF 60, p. 4.

At the time that Defendant Wilson filed her motion, the definition of "peace officer"

applicable to C.R.S. § 13-21-131 included a requirement that the officer be employed by

a local government.  That requirement, however, was removed as the law was amended

on July 6, 2021. *See* CO LEGIS 458 (2021), 2021 Colo. Legis. Serv. Ch. 458 (H.B. 21-

1250).[7] As currently enacted, C.R.S. 13-21-131 creates a cause of action as to "peace

---

[7] The statute was amended as follows: "13–21–131. Civil action for deprivation of rights. (1) A peace officer, as defined in section 24–31–901 (3), ~~employed by a local government~~ who, under color of law, subjects or causes to be subjected, including failing to intervene, any other person to the deprivation of any individual rights that create binding obligations on government actors secured by the bill of rights, article II of the state constitution, is liable to the injured party for legal or equitable relief or any other appropriate relief."

officers" without the requirement that they be employed by "local governments." The inequality that Defendant Wilson relies on, is therefore no longer present in the statute.

Both parties briefed this issue prior to the amendment to C.R.S. § 13-21-131. The Plaintiffs have therefore not raised the issue of jurisdiction or mootness. Nonetheless, the Court has an independent duty to inquire into its jurisdiction, and the Court thus examines this issue sua sponte. *Phelps v. Hamilton*, 122 F.3d 1309, 1316 (10th Cir. 1997). Under the constitutional-mootness doctrine, a federal court has jurisdiction over only "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir. 2010). When considering mootness, the court asks: "have circumstances changed since the beginning of litigation that forestall any occasion for meaningful relief[?]" *Id.* at 1122.

Here, Defendant Wilson asks this Court to find C.R.S. § 13-21-131 unconstitutional on its face because the definition of peace officers does not include Colorado State Patrol Officers. Since the filing of her motion, however, section 131 has been amended so as to address Defendant Wilson's allegations. The issue raised by Defendant Wilson is thus moot. *Id; see also Concrete Works of Colorado, Inc. v. City & Cty. of Denver*, 321 F.3d 950, 954 (10th Cir. 2003) ("CWC's claims for prospective injunctive relief relating to the 1990 and 1996 Ordinances, however, became moot as each was amended and ultimately replaced by the 1998 Ordinance.").

For these reasons, Defendant Wilson's Partial Motion to Dismiss is **DENIED** in its entirety**.** Given the Court's analysis, *supra*, however, the court sua sponte dismisses Plaintiffs' Claims Four and Nine against Defendant Wilson.

## VI.  DEFENDANT MAYOR MICHAEL COFFMAN'S MOTION TO DISMISS

Defendant Mayor Coffman seeks dismissal of Plaintiffs' First and Second claims for relief. In these causes of action, Plaintiffs allege First Amendment violations of freedom of speech (First Claim for Relief) and Retaliation (Second Claim for Relief). The basis for Plaintiffs' claims here differ from the basis for the claims against the defendant officers.

As alleged against Defendant Coffman, the Plaintiffs' First Amendment causes of action stem from his conduct following the filing of Plaintiffs' initial complaint. The Plaintiffs specifically argue that Defendant Coffman violated their First Amendment rights "in pressuring and/or threatening Plaintiffs Minter and Mayes." The Plaintiffs allege that, following the filing of their initial complaint, Defendant Coffman called each of them to discuss their membership on the Aurora Police Department's Civilian Oversight Task Force ("Task Force") while participating in the lawsuit. ECF 20, ¶ 185. The Plaintiffs allege that Defendant Coffman gave the Plaintiffs Minter and Mayes two options "either: (1) drop out of the lawsuit or (2) resign from the Task Force." *Id.* Plaintiffs allege that Defendant Coffman told Plaintiff Minter that if she did not take either of these actions, he would get the Aurora City Attorney involved. *Id.* The Plaintiffs then amended their complaint to add retaliation allegations against Defendant Coffman.

40

Defendant Coffman asks the Court to dismiss the claims against him for failure to state a claim pursuant to Fed. R. Civ. P 12(b)(6) and asserts the defense of qualified immunity. For the reasons that follow, Defendant Coffman's Motion to Dismiss the claims against him is **GRANTED**.

### A. First Amendment Freedom of Speech Claim

The Plaintiffs first allege that Defendant Coffman violated their First Amendment right to free speech. "As a general matter, 'the First Amendment means that a government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Ashcroft v. Am. C.L. Union*, 535 U.S. 564, 573 (2002). Defendant Coffman argues that Plaintiffs have failed to allege that Defendant Coffman imposed a prior restraint on their speech, and that both Plaintiffs' claims against him are thus properly analyzed under the Court's retaliation analysis.

In response, the Plaintiffs direct the Court to *Brandt v. City of Westminster*, 300 F. Supp. 3d 1259 (D. Colo. 2018), in which a court in this district found that the plaintiff had stated both a cognizable First Amendment claim and a First Amendment retaliation claim. The facts of *Brant*, however, fail to support the Plaintiffs' position here. In *Brandt*, the plaintiff was walking down the street with a sign described as "a gigantic Styrofoam middle finger emblazoned with the letters 'Fuck cops.'" *Id.* at 1264. The plaintiff was detained by officers and cited for disorderly conduct. The plaintiff then brought a suit alleging, in part, a First Amendment retaliation claim and an as-applied First Amendment claim. The district court permitted both claims to go forward, noting that "[w]hile they are certainly closely related . . . [plaintiff] here clearly articulates two parallel claims." *Id.* at 1282. In

41

*Brandt*, the plaintiff was stopped while engaging in protected speech, and the court was thus able to identify the speech that was actually restricted. The same is not true, however, of the Plaintiffs in this action. Here, the Plaintiffs engaged in protected activity by filing a lawsuit. No restrictions were placed on their ability to do so, nor did Defendant Coffman interfere with the filing of said lawsuit. The Plaintiffs' Amended Complaint instead focuses only on Defendant Coffman's alleged actions in response to the Plaintiffs' filing of the complaint. The Plaintiffs have thus failed to articulate two parallel claims. The Plaintiffs have alleged a single claim which is properly analyzed under the retaliation framework. Defendant Coffman's motion to dismiss Claim One is **GRANTED.**

### B. First Amendment Retaliation

To prevail on a First Amendment retaliation claim, Plaintiffs must establish: (1) that they engaged in constitutionally protected activity, (2) that the defendant's actions caused plaintiffs to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Perez v. Ellington*, 421 F.3d 1128, 1132 (10th Cir. 2005); *Worrell v. Henry*, 219 F.3d at 1212. The Court finds that Plaintiffs have failed to allege facts sufficient to meet the second element of their retaliation claim, and it therefore need not consider whether Defendant Coffman is entitled to qualified immunity.

The Plaintiffs here allege that Defendant Coffman retaliated against Plaintiffs Minter and Mayes by "pressuring and/or threatening" them. *See* ECF 20, ¶ 235. The particular "threat" identified by the Plaintiffs was Coffman's statement that Minter's

42

participation in the lawsuit and on the taskforce was "a clear conflict of interest" and his directive that she either (1) drop the lawsuit or (2) resign from the Task Force. ECF 20, ¶ 185; *see also* ¶ 187 (describing similar threats to Plaintiff Mayes). The Plaintiffs allege that Coffman told Minter that failure to take either action would result in involvement of the Aurora City Attorney. *Id.* at ¶ 185.  The Plaintiffs further argue that Defendant Coffman clearly intended to retaliate against them because he did not ask Defendant Jeanette Rodriguez to resign from the task force, notwithstanding that she has also been implicated in this lawsuit.

While the Plaintiff's allegations do not paint a particularly flattering portrait of Defendant Coffman's actions, the Plaintiffs have failed to allege facts supporting a claim of retaliation against him under these particular facts. To state a cognizable claim for retaliation, the plaintiffs must establish that the alleged injury would chill a person of ordinary firmness from continuing to engage in the constitutionally protected activity. Here, the Plaintiffs allege that they engaged in protected activity when they filed their lawsuit.

To the extent that the conduct complained of is Defendant Coffman's request that they *resign from the taskforce*, such allegations cannot form the basis of a plausible cause of action. Accepting as true the Plaintiffs' allegations, the activity allegedly impeded by Defendant Coffman was participation on the Task Force, not maintenance of the lawsuit. The Plaintiffs have thus failed to allege facts sufficient to establish that Defendant Coffman's actions caused them an injury that would chill a person of ordinary firmness from continuing to engage in protected activity (in this case, maintaining their lawsuit).

43

Regardless, and even when considering Coffman's alleged directive to drop the lawsuit, the facts alleged do not support a cause of action here because precedent instructs that verbal threats are not sufficient to support a cause of action for retaliation. Defendant Coffman directs the Court to *Williams v. Martinez*, 2010 WL 330313, at *1 (D. Colo. Jan. 20, 2010), in which the court indicated that "[n]o matter how inappropriate, verbal harassment and threats without more do not state an arguable constitutional claim." The Plaintiffs, in response, refer the Court to *Van Deelen v. Johnson*, 497 F.3d 1151, 1154 (10th Cir. 2007) to argue that "threats by a deputy sheriff 'surely suffice under our precedent to chill a person of ordinary firmness from continuing to seek redress'…". The threatening conduct at issue in *Van Deelen*, however, involved both physical and verbal intimidation. The plaintiff in that action alleged that the threatening individual actually physically touched him, and that he threatened to shoot him. The conduct at issue in *Van Deelen* is thus not comparable to that at issue here, where Coffman raised the issue of conflict of interest, and ask the Plaintiffs to either drop the lawsuit or resign from the taskforce.

Because verbal threats, without more, cannot form the basis of a claim for retaliation, the Plaintiffs have failed to state a plausible claim for relief for retaliation against Defendant Coffman. Defendant Coffman's motion to dismiss Plaintiffs' Claim Two is **GRANTED**.

44

## VII.    CLASS ALLEGATIONS

In their motions to dismiss, Defendants Rodriguez and the Aurora Officers seek dismissal of Plaintiffs' class allegations. A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b). In the typical case where the plaintiff affirmatively applies for class certification, plaintiff bears the burden of proving that Rule 23's requirements are satisfied. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir.2010) (citing *Shook v. El Paso County*, 386 F.3d 963, 968 10th Cir.2004)). As of the filing of motions to dismiss, the Plaintiffs had not yet moved for class certification. That motion was not filed until February 28, 2022 (ECF 154), and it is not yet fully briefed. The Defendants thus ask the Court to preemptively deny class certification.

"Rule 23 does not prohibit a defendant from asserting a 'preemptive' motion to deny class certification." *Murphy v. Aaron's, Inc.*, No. 19-CV-00601-CMA-KLM, 2020 WL 2079188, at *4 (D. Colo. Apr. 30, 2020). "However, courts in the District of Colorado hold Rule 12(f) motions to strike class allegations to a high standard of proof." *Id.* Court's in this district have suggested that, to prevail on a preemptive motion to deny class certification, "a defendant "must demonstrate from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Wornicki v. Brokerpriceopinion.com, Inc.,* No. 13-CV-03258-PAB-KMT, 2015 WL 1403814, at *4 (D. Colo. Mar. 23, 2015) (citing *Francis v.*

*Mead Johnson & Co.*, No. 10–cv–00701–JLK, 2010 WL 3733023 at *1 (D.Colo. Sept. 16, 2010).

At this early stage, the Court finds that ruling on class certification would be inappropriate. To the extent that the Defendants move to dismiss the class allegations against them, such motions are **DENIED.**

## VIII.   CONCLUSION

For the reasons stated herein, the Court **ORDERS** as follows:

1.  The Aurora Officers' Motion to Dismiss, ECF 66, is **GRANTED in part** and **DENIED in part.** Plaintiffs' Fourth and Ninth Claims for Relief against the Aurora Officer Defendants are **DISMISSED with prejudice.**

2.  The Arapahoe and Jefferson County Officers' Motion to Dismiss, ECF 62, is **GRANTED in part** and **DENIED in part.** Plaintiffs' Fourth, Fifth, Ninth, and Tenth Claims for Relief against the County Officers are **DISMISSED with prejudice.**

3.  Jeanette Rodriguez's Partial Motion to Dismiss, ECF 64, is **GRANTED in part** and **DENIED in part**. Plaintiffs' Fourth, Fifth, Ninth, and Tenth Claims for Relief against the Defendant Rodriguez are **DISMISSED with prejudice.**

4.  Chief Vanessa Wilson's request that C.R.S. § 13-21-131 be found unconstitutional, ECF 60, is **DENIED.** The Court finds, sua sponte, that Plaintiffs' Fourth and Ninth Claims for Relief against Defendant Wilson are **DISMISSED with prejudice.**

5.  Defendant Mayor Michael Coffman's Motion to Dismiss, ECF 61, is **GRANTED.** Plaintiffs' First and Second Claims for Relief against Defendant Coffman are **DISMISSED with prejudice.**

DATED:  March 28, 2022

BY THE COURT:

_____

REGINA M. RODRIGUEZ
United States District Judge